In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3771

RODNEY L. BOYKO,

Petitioner-Appellant,

v.

AL C. PARKE, Superintendent,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 97 C 424--Allen Sharp, Judge.

ARGUED SEPTEMBER 18, 2000--DECIDED JULY 27, 2001

Before EASTERBROOK, RIPPLE and WILLIAMS,
Circuit Judges.

RIPPLE, Circuit Judge.  At the age of
fifteen, Rodney Boyko was convicted of
the murder of Lester Clouse and sentenced
to 35 years in prison. His conviction was
affirmed on direct appeal by the Indiana
Court of Appeals, see Boyko v. State, 566
N.E.2d 1060 (Ind. Ct. App. 1991), and he
did not petition for transfer to the
Indiana Supreme Court. Mr. Boyko then
filed a petition for postconviction
relief in which he alleged, inter alia,
that his trial counsel was
constitutionally ineffective in failing
to consider and to raise certain
defenses. After holding an evidentiary
hearing on the matter, the Indiana trial
court denied Mr. Boyko's petition. The
Indiana Court of Appeals affirmed that
denial, and the Indiana Supreme Court
denied Mr. Boyko's petition for transfer.

Mr. Boyko subsequently filed a petition
for habeas corpus in the district court.
He then sought leave from the district
court to expand the record to include a
transcript of a hearing that was held
before his case was waived from juvenile
court; he alleged that this transcript
supported his claim of ineffective
assistance of counsel. He also sought
leave to conduct discovery, primarily in
order to depose his trial defense
counsel. The district court denied Mr.

Boyko's motions and denied his habeas petition on the merits. Mr. Boyko now appeals. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings.

I

BACKGROUND

A.  Facts

When he was fifteen years old, Mr. Boyko was involved in a homosexual relationship with twenty-one-year-old Lester Clouse. Mr. Boyko did not want to continue therelationship and came to learn that Clouse had told a mutual acquaintance that, if he [Clouse] could not have Mr. Boyko, no one could. Mr. Boyko, armed with a .22 caliber semiautomatic pistol, went to Clouse's apartment to confront him. During their conversation, Mr. Boyko asked Clouse to take a drive with him. Mr. Boyko had been acting strangely, and, before leaving the apartment, Clouse said to his roommates, "'If I'm not back by this evening you know what happened to me.'" Boyko v. State, 566 N.E.2d 1060, 1062 (Ind. Ct. App. 1991).

Mr. Boyko drove Clouse to a secluded area. The two men got out of the car. Mr. Boyko confronted Clouse with the "if I can't have you no one can" statement, and he shot the pistol into the air several times. Clouse grabbed the pistol from Mr. Boyko. The two men then returned to the car, and Clouse gave the pistol back to Mr. Boyko. Mr. Boyko reloaded the pistol and cocked it, placing a live round in the pistol's chamber. Clouse placed his hand on Mr. Boyko's leg, and Mr. Boyko discharged the pistol into Clouse's chest.

After he shot Clouse, Mr. Boyko put the body in the trunk of his car and asked several friends to help him dispose of it. He made plans to leave the state, but he was apprehended by the police following a high-speed chase seventeen hours after the shooting. Clouse's body was still in the trunk of the car when Mr. Boyko was apprehended.

B.  Earlier Proceedings

1.

Mr. Boyko was placed on trial for the intentional killing of Clouse. Mr. Boyko's trial counsel defended the case on the ground that the shooting was accidental. The jury, however, found otherwise and convicted Mr. Boyko of Clouse's murder. The court sentenced Mr. Boyko to 35 years' imprisonment.

2.

Mr. Boyko appealed his conviction to the Indiana Court of Appeals. He raised three arguments: (1) the evidence introduced at trial was insufficient to support the jury's finding that he intentionally killed Clouse, (2) the trial court erred in allowing him to testify while he was still feeling groggy from antidepressants administered to him while he was incarcerated the night before his trial, and (3) the trial court erred in permitting the jury to view evidence that indicated that Mr. Boyko had a juvenile record. The Indiana Court of Appeals rejected all three of Mr. Boyko's arguments and affirmed his conviction. Mr. Boyko did not petition for transfer to the Indiana Supreme Court./1

3.

Mr. Boyko filed a petition for postconviction relief in the trial court after the Indiana Court of Appeals denied his direct appeal. He raised two arguments in his petition: (1) ineffective assistance of appellate counsel in failing to argue that trial counsel had been ineffective and (2) prosecutorial misconduct. The trial court initially denied Mr. Boyko's petition without a hearing, but it vacated its decision after Mr. Boyko filed a motion to correct error. The court then held a full evidentiary hearing on Mr. Boyko's petition.

The evidence Mr. Boyko presented at the hearing pertained mainly to his ineffective assistance of counsel claim. Prior to the hearing, Mr. Boyko had been interviewed by Kathleen Goudy, a certified clinical social worker. Goudy then testified at Mr. Boyko's hearing as to the content of the interview and the opinions she had formed from it. She opined that Mr. Boyko never had consented to his sexual relationship with Clouse;

instead, Clouse repeatedly had raped and sexually abused Mr. Boyko, but Mr. Boyko was unable to recognize Clouse's conduct as abuse. Goudy also explained that, starting from the time he was nine years old, Mr. Boyko had been sexually abused by several other older men in addition to Clouse. In Goudy's opinion, at the time he shot Clouse, Mr. Boyko was suffering from post traumatic stress disorder ("PTSD"), the result of years of sexual abuse. In Goudy's opinion, when Clouse touched Mr. Boyko's leg on the night of the shooting, Mr. Boyko thought Clouse was about to molest him again or possibly kill him./2 Mr. Boyko reacted to Clouse's touch in an uncontrolled manner because that touch triggered a panic attack as a result of the PTSD. Goudy's opinion was that Mr. Boyko shot Clouse in an attempt to protect himself.

Based on this testimony, Mr. Boyko argued at his evidentiary hearing that his trial counsel had been ineffective in presenting Mr. Boyko's relationship with Clouse to the jury as consensual rather than abusive, especially given Mr. Boyko's legal inability to consent to sexual relations with an adult under Indiana's child molestation laws./3 Mr. Boyko further argued that his trial counsel should have considered the possibility that Mr. Boyko was suffering from PTSD as a result of years of sexual abuse and should have presented this possibility to the jury as negating the necessary mens rea for murder or as establishing Mr. Boyko's perceived need for self-defense. At the very least, Mr. Boyko argued, this evidence could have been presented in mitigation at sentencing.

Mr. Boyko's trial counsel testified at the evidentiary hearing as well, and Mr. Boyko questioned him about his failure to consider PTSD as a possible defense. Trial counsel explained that he knew of Mr. Boyko's sexual encounters with Clouse and with the other men, but he thought these relationships were consensual rather than abusive. He further testified that he did not investigate whether Mr. Boyko was suffering from PTSD. He admitted, however, that he would have raised PTSD as a defense if he had realized that Mr. Boyko may have suffered from it, but he was not certain that it would have been an effective defense.

After hearing the evidence and the arguments, the trial court ruled that Mr. Boyko's trial counsel had not been constitutionally ineffective in failing to raise a PTSD defense. The court pointed out that Mr. Boyko himself did not recognize that he might have suffered from PTSD at the time of the shooting nor did he ever suggest to his attorney that he raise a PTSD defense at trial. The court concluded that, if Mr. Boyko's trial counsel had raised PTSD as a defense, it would have been an alternate theory to the accidental shooting theory, and the presentation of alternate defenses may have been ineffective with the jury. The court also noted that trial counsel presented evidence on behalf of Mr. Boyko, cross-examined the prosecution's witnesses, presented closing arguments to the jury, and successfully argued and obtained a jury instruction regarding the lesser-included offense of reckless homicide. In light of these considerations, the court concluded that the assistance provided by Mr. Boyko's trial counsel "was within the wide range of reasonable professional legal assistance and that it was not inadequate so as to render his legal representation ineffective." Record of Postconviction Proceedings, Vol. I at 57.

Mr. Boyko also made several contentions in his written petition for postconviction relief that he did not pursue at his evidentiary hearing. In particular, Mr. Boyko alleged that his trial counsel was ineffective in failing to investigate and present a theory of self-defense./4 Mr. Boyko indicated in response to the State's written interrogatories that, if his trial counsel had spoken to various witnesses, he would have learned that (1) Clouse was obsessed with Mr. Boyko, (2) Mr. Boyko feared Clouse, (3) Mr. Boyko did not want to have a relationship with Clouse, (4) Clouse repeatedly raped Mr. Boyko, (5) Mr. Boyko had tried to move out of the state to avoid Clouse, and (6) Clouse had threatened Mr. Boyko and was armed when he made the threat. Although Mr. Boyko made these assertions in writing, he made no attempt to support them through live testimony at his postconviction evidentiary hearing nor did he pursue these issues through argument. The trial court noted Mr. Boyko's failure to raise

these issues at the evidentiary hearing, but it declined to comment on them further.

Having rejected or declined to address each of the arguments Mr. Boyko raised in his petition for postconviction relief, the court denied the petition in its entirety.

4.

Mr. Boyko appealed the trial court's denial of his petition for postconviction relief to the Indiana Court of Appeals. He challenged the trial court's disposition of his ineffective assistance of counsel claims. The Court of Appeals first considered whether Mr. Boyko had waived his ineffective assistance of counsel claims by not raising them on direct appeal. It held that, "because Boyko raised ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel on direct appeal in his post-conviction petition, the ineffective assistance of counsel issues have been preserved." R.40, App.A at 10 (emphasis added). The court then proceeded to address the merits of Mr. Boyko's claims with respect to both trial and appellate counsel./5

First, the court considered whether Mr. Boyko's trial counsel had been ineffective. The court recounted Goudy's testimony at the evidentiary hearing concerning her diagnosis of Mr. Boyko as having suffered from PTSD at the time of the shooting. It also recounted Mr. Boyko's trial counsel's statements at the evidentiary hearing that he had not viewed Mr. Boyko's relationships as molestations and that he would have brought a PTSD defense had he known that Mr. Boyko was suffering from the condition. The court also noted Mr. Boyko's own statement at trial that he was "dating" Clouse and his statement at the postconviction hearing that he did not know or suggest to his attorney that he might have had PTSD at the time of the shooting. Id. at 11. The court then concluded that, even if Mr. Boyko's trial counsel should have investigated a PTSD defense, it could not say that his failure to do so "deprived the jury of evidence concerning that [sic] state of Boyko's mental health at the time of the incident. Boyko's trial counsel was not

ineffective." Id. at 12.

The court then turned to Mr. Boyko's claim that his trial counsel should have considered a theory of self-defense. The court observed that Mr. Boyko had testified at trial that Clouse had not threatened him at the time of the shooting and that the gun had discharged accidentally. The court reasoned that Mr. Boyko's trial counsel had to make a choice as to the best theory of defense to present to the jury. The court explained, "In a situation of this sort, one can always hypothesize that had Boyko's trial counsel taken a different approach to Boyko's defense it might have been more successful. Boyko's trial counsel rendered adequate legal assistance." Id.

Lastly, the court concluded that, because Mr. Boyko's trial counsel had not been ineffective, his appellate counsel was not ineffective for failing to raise trial counsel's ineffectiveness. The court therefore affirmed the trial court's denial of Mr. Boyko's petition for postconviction relief. Mr. Boyko petitioned for transfer to the Indiana Supreme Court, but his petition was denied.

5.

Having had no success in the state system, Mr. Boyko sought relief from the federal courts in the form of a writ of habeas corpus. His federal habeas petition has suffered a somewhat tortured procedural progression. Mr. Boyko initially filed his habeas petition pro se. The district court refused to appoint counsel and dismissed the petition as untimely. We granted Mr. Boyko a certificate of appealability and appointed his current attorney to represent him. While his appeal was pending, Mr. Boyko filed a Rule 60(b) motion for relief from judgment in the district court. The district court held a hearing on Mr. Boyko's Rule 60(b) motion and purported to grant the motion following the hearing. We, however, held that the district court was without jurisdiction to rule on a Rule 60(b) motion while an appeal was pending. We treated the district court's ruling as a statement of that court's intention to grant Mr. Boyko Rule 60(b) relief and to

reinstate the initial habeas petition. Consequently, we remanded the case to the district court to allow it to enter the appropriate order. See Boyko v. Anderson, 185 F.3d 672 (7th Cir. 1999).

On remand, the district court granted Mr. Boyko's Rule 60(b) motion. Now represented by counsel, Mr. Boyko filed a motion to expand the record, to undertake discovery, and to delay disposition of the habeas petition until discovery had been completed. Specifically, Mr. Boyko sought to expand the record to include a transcript of a juvenile waiver hearing held in his case before he was transferred from juvenile to state court to be tried as an adult ("the transcript"). He also wanted to include in the record various documents needed to establish the authenticity of the transcript. According to Mr. Boyko, the transcript contained testimony that established that Clouse intended to kill him, that he knew about Clouse's threats, and that his relationship with Clouse was not consensual. Mr. Boyko believed that this information rendered highly questionable his trial counsel's decision to present an accident defense to the jury; had his attorney had the transcript, the attorney would have had the evidence he needed to recognize a potential self-defense or PTSD defense. Mr. Boyko also asserted in his written submissions to the district court that, despite due diligence on his part, he had been unable to obtain a copy of the transcript during the state court proceedings and therefore could not introduce it earlier as support for his ineffective assistance of counsel claims. Lastly, Mr. Boyko asked the district court for leave to conduct discovery, primarily to depose his trial counsel to determine whether counsel knew about the transcript at the time of the trial.

The district court denied Mr. Boyko's requests to expand the record and to conduct discovery, and it dismissed his petition on the merits. The court did not believe that Mr. Boyko's case was a candidate for an evidentiary hearing, expressing some concern that Mr. Boyko was seeking to present in the district court issues that were never raised in the state courts. The court further stated that discovery was unnecessary, presumably because Mr. Boyko had failed

to meet the good-cause standard established by Bracy v. Gramley, 520 U.S. 899 (1997).

As to the merits of Mr. Boyko's petition, the district court stated that the Indiana Court of Appeals' decisions on the ineffective assistance of counsel claims were not contrary to the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984). The court also determined that the state courts' decisions were not an unreasonable application of Strickland to the facts of Mr. Boyko's case. Although noting that the materials Mr. Boyko sought to incorporate into the record had an "appeal," R.86 at 6, the district court believed that the standards established by 28 U.S.C. sec. 2254(d)/6-com-pelled it to deny Mr. Boyko's petition for a writ of habeas corpus. This appeal followed.

## II

## DISCUSSION

Mr. Boyko believes that he is entitled to a writ of habeas corpus because the state courts' rejection of his ineffective assistance of counsel claims, as they were presented to them, was an unreasonable application of Strickland and its progeny. See 28 U.S.C. sec. 2254(d)(1). Alternatively, Mr. Boyko submits that the district court abused its discretion in refusing to allow him to expand the record or to conduct discovery in order to incorporate the transcript and other materials that are helpful to his case but were unavailable to him during the earlier proceedings in state court. Because we believe that Mr. Boyko is entitled to a limited use of discovery and expansion of the record, we do not reach the merits of his ineffective assistance of counsel claims.

1.

During his postconviction proceedings, Mr. Boyko argued to the state courts that his conviction should be overturned because his trial counsel's representation was constitutionally deficient. Mr. Boyko submitted that his counsel should have argued at trial that

the shooting was in self-defense or that the necessary element of intent was missing because Mr. Boyko suffered from PTSD. However, Mr. Boyko never suggested explicitly to the state courts in the postconviction proceedings that his trial counsel was ineffective in failing to procure a copy of the transcript. Because Mr. Boyko never has presented his ineffective assistance claims based on the transcript to the state courts, we must determine whether he has exhausted his state remedies with respect to these claims.

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted his state court remedies. See 28 U.S.C. sec. 2254(b)(1)(A). To exhaust his remedies, a habeas petitioner must fully and fairly present his federal claims to the state courts. See Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." Id.; see also Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999). The petitioner must have placed both the operative facts and the controlling legal principles before the state courts. See Rodriguez, 193 F.3d at 916.

In applying these standards, federal courts should "avoid hypertechnicality." Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992). A petitioner may reformulate his claims somewhat, so long as the substance of his argument remains the same. See Picard v. Connor, 404 U.S. 270, 277-78 (1971) ("Obviously there are instances in which the ultimate question for disposition will be the same despite variations in the legal theory or factual allegations urged in its support. . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.") (internal citations and quotation marks omitted); Verdin, 972 F.2d at 1474. "[M]ere variations in the same claim rather than a different legal theory will not preclude exhaustion." Wilks v. Israel, 627 F.2d 32, 38 (7th Cir. 1980) (citing Macon v. Lash, 458 F.2d 942, 948 (7th Cir. 1972)). However, a petitioner's reformulation of his claim should not place the claim in a significantly

different legal posture by making the claim stronger or more substantial. See Demarest v. Price, 130 F.3d 922, 932 & 939 (10th Cir. 1997).

Given these principles, we believe Mr. Boyko's ineffective assistance of counsel claim has been exhausted, even though Mr. Boyko did not base his arguments in the state court on trial counsel's failure to obtain the transcript. The situation presented in this case is not one in which a petitioner seeks to present a ground of ineffectiveness that is entirely independent of the grounds presented in the state courts./7 Mr. Boyko argued throughout his postconviction proceedings that his trial counsel should have pursued self-defense and PTSD theories. He raises these same claims in his federal habeas petition. The transcript does not change the substance of these arguments; instead, it merely supplies an additional piece of evidence that counsel would have found had he pursued self-defense or PTSD theories. In ruling on Mr. Boyko's habeas petition, the federal courts must resolve the same question that the state courts were asked to resolve, namely whether Mr. Boyko's trial counsel was ineffective in failing to pursue self-defense or PTSD theories. See Lanigan v. Maloney, 853 F.2d 40, 44-45 (1st Cir. 1988) (holding that a habeas petitioner's claims had been exhausted, even though the petitioner reformulated his claim in federal court by "add[ing] detail" because the petitioner's "claim to both the state and federal courts depend[ed] upon resolution of the same question"). At most, then, we believe that the transcript "supplements, but does not fundamentally alter, the claim presented to the state courts." Caballero v. Keane, 42 F.3d 738, 741 (2d Cir. 1994); see also Vasquez v. Hillery, 474 U.S. 254, 258-59 (1986). As such, Mr. Boyko's present reliance on the transcript does not render his ineffective assistance of counsel claims unexhausted.

2.

Our determination that Mr. Boyko has exhausted his ineffective assistance of counsel claims does not necessarily allow him to rely on the transcript in pressing his claims in federal court. The transcript is a new piece of evidence

that never was placed before the state courts for their consideration, even though Mr. Boyko was given the opportunity to explore his claims during a postconviction evidentiary hearing. Although the absence of the transcript during the state court proceedings did not affect the legal substance of Mr. Boyko's argument, and thus did not prevent exhaustion, it may have prevented Mr. Boyko from developing the full factual basis of his claim. We must determine what effect, if any, this underdevelopment of the factual record in the state courts has on Mr. Boyko's present efforts to rely on the transcript in federal court.

A federal court's ability to hold an evidentiary hearing in order to supplement the record when the petitioner "has failed to develop the factual basis of a claim in State court proceedings" is severely circumscribed. 28 U.S.C. sec. 2254(e)(2)/8; see also Williams v. Taylor, 529 U.S. 420, 437 (2000) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."). We recognize that Mr. Boyko has not yet asked the district court to hold an evidentiary hearing; instead, he seeks permission to conduct discovery and to expand the record. These procedural devices, however, can be used to introduce new factual information into the record in lieu of an evidentiary hearing. See, e.g., Brown v. Johnson, 224 F.3d 461, 469 (5th Cir. 2000) (stating that expansion of the record can be used as a "paper hearing" in place of an evidentiary hearing). When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing. See McNair v. Haley, 97 F. Supp.2d 1270, 1286 (M.D. Ala. 2000) ("The petitioner cannot use Rule 7 [of the Rules Governing sec. 2254 cases, which allows expansion of the record] to secure the benefits that only subdivision (e)(2) [of sec. 2254] can bestow.").

Of course, discovery and expansion of the record have other uses as well, such as determining whether an evidentiary hearing is necessary or proper. See,

e.g., Blackledge v. Allison, 431 U.S. 63, 81-82 (1977) (explaining that discovery and expansion of the record can be used to avoid the need for an evidentiary hearing); Cardwell v. Greene, 152 F.3d 331, 338-39 (4th Cir. 1998), overruled on other grounds by Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000) (stating that expansion of the record may obviate the need for an evidentiary hearing); McDonald v. Johnson, 139 F.3d 1056, 1060 (5th Cir. 1998) (stating that expansion of the record is appropriate to determine whether an evidentiary hearing is proper). When the procedural devices available to habeas petitioners are used in this manner, it makes little sense to impose the same restrictions that are placed on petitioners seeking an evidentiary hearing.

Mr. Boyko's ultimate goal in this case is to introduce the transcript into the record and to have a federal court evaluate his ineffective assistance of counsel claims in light of the information in the transcript. Regardless of the procedural device through which Mr. Boyko seeks to accomplish this goal, he is asking that a federal court evaluate the merits of factual matters never presented to the state courts. Because sec. 2254(e)(2) restricts a petitioner's attempts to supplement the factual record, Mr. Boyko must satisfy that provision's requirements before he may place new factual information before the federal court.

The Supreme Court clarified the scope of sec. 2254(e)(2)'s restrictions in Williams v. Taylor, 529 U.S. 420 (2000). There, the Court held that, "[u]nder the opening clause of sec. 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams, 529 U.S. at 432. The Court emphasized that the focus ought to be on whether the petitioner was diligent in his efforts to develop the facts, not on whether the facts were discoverable. See id. at 435. "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." Id. The Court also made

clear that, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to investigate and present the evidence to the state courts. See id. at 438-40 (holding that the petitioner failed to develop the factual record, and therefore was subject to the provisions of sec. 2254(e)(2), when there was evidence in the record that put counsel on notice of the existence and possible materiality of a psychiatric report, but counsel made insufficient efforts to obtain the report).

In the instant case, Mr. Boyko has made certain allegations that lead us to believe that he ought to be given the opportunity to demonstrate that he did not "fail" to develop the factual record in the state courts. Mr. Boyko has alleged that the State refused to give him a copy of the transcript, even though he asked it to do so on several occasions. The record shows that the public defender initially appointed to represent Mr. Boyko, who was not the same attorney who represented him at trial, filed a written request for production of the transcript. According to Mr. Boyko, this request went unanswered. Mr. Boyko claims that he personally renewed the request prior to his postconviction proceedings by asking the juvenile court to produce a copy of the transcript for him, but the "judge and judicial law clerk" told him that he needed to have a petition for postconviction relief on file before a copy of the transcript could be produced. R.61, Ex.G at 2. These allegations present the possibility that the State was delinquent in its duty to provide Mr. Boyko with a copy of the transcript. If the State was at fault in failing to produce the transcript after Mr. Boyko properly had asked it to do so, then the absence of the transcript would not be due to Mr. Boyko's lack of diligence in pursuing the matter earlier. The state court record would be incomplete through no fault of Mr. Boyko's, and sec. 2254(e)(2) would not prevent him from supplementing the record in federal court.

We think it important to emphasize, however, that the lack of cooperation by

the State that we have just discussed is by no means a foregone conclusion; indeed, there are competing inferences available from the record. For instance, the written request for production of the transcript filed by the public defender may have put Mr. Boyko's trial counsel on notice that the transcript existed and potentially was material. If trial counsel failed to pursue production of the transcript despite this notice, that failure might implicate the opening clause of sec. 2254(e)(2). Similarly, Mr. Boyko claims that his postconviction counsel "did not pursue [Mr. Boyko's] juvenile issues--he rejected them out-of-hand with no inquiry or investigation into them." Id. This claim suggests that Mr. Boyko's postconviction counsel may have made a conscious choice not to pursue production of the transcript despite knowledge of its existence, which also might implicate the provisions of sec. 2254(e)(2).

These competing inferences available from the record leave us unable to determine whether Mr. Boyko has failed to develop the factual basis of his claim in state court and whether he ought to be required to satisfy the provisions of sec. 2254(e)(2) before being allowed to rely on the transcript in federal court. Consequently, we must remand this case to the district court for resolution of this issue. The district court may, within its discretion, allow Mr. Boyko to expand the record or to conduct discovery for the sole purpose of obtaining the information necessary to determine whether Mr. Boyko failed to develop the record in state court./9 If Mr. Boyko's lack of diligence was not the cause of the transcript's nonproduction, the district court should assess the most efficient and effective means for evaluating the material in the transcript to determine whether it is relevant and helpful to Mr. Boyko's case. We wish to emphasize that, on remand, discovery and expansion of the record should not be used to augment or evaluate the merits of Mr. Boyko's ineffective assistance of counsel claims, at least not until the district court has assured itself that Mr. Boyko is entitled to rely on the transcript in advancing those claims.

Conclusion

Mr. Boyko only may rely on the

transcript in advancing his ineffective assistance of counsel claims in federal court if he can demonstrate that the nonproduction of the transcript during the state court proceedings was not the result of his own lack of diligence. On remand, the district court should determine the proper scope of the discovery and expansion of the record necessary to evaluate whether Mr. Boyko has failed to develop the factual record in state court. We express no opinion on the merits of Mr. Boyko's ineffective assistance of counsel claims at this time. Circuit Rule 36 will apply on remand.

REVERSED and REMANDED

FOOTNOTES

/1 None of the contentions made on direct appeal are presented in this federal habeas petition.

/2 Mr. Boyko apparently had told Goudy during their interview that Clouse often began his molestations by placing his hand on Mr. Boyko's leg, as he did that night in the car before Mr. Boyko shot him.

/3 Under Indiana law at the time of Mr. Boyko's trial, a person sixteen years or older who engaged in sexual intercourse with a child between the ages of twelve and sixteen committed the crime of child molesting, a Class C felony. See Ind. Code 35-42-4-3 (amended by P.L. 79-1994, Sec. 12). Under current Indiana law, a person twenty-one years or older who engages in sexual intercourse with a child commits the felony of child molesting only if the child is under fourteen years of age. See Ind. Code 35-42-4-3 (2001).

/4 Mr. Boyko also raised a prosecutorial misconduct claim. That claim is not at issue in this appeal.

/5 The State argues that Mr. Boyko's arguments in federal court should be confined to the effectiveness of appellate counsel. However, the Indiana Court of Appeals held that the ineffective assistance of counsel issues had been preserved and addressed the merits of Mr. Boyko's claim with respect to trial counsel without indicating that the claim was procedurally barred. Consequently, we are free to reach the merits of that claim. See Harris v. Reed, 489 U.S. 255, 263 (1989); Jenkins v. Nelson, 157 F.3d 485, 491 (7th Cir. 1998), cert. denied, 527 U.S. 1039 (1999).

/6 28 U.S.C. sec. 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/7 See, e.g., Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999) (holding that the petitioner had not fairly presented his claim of ineffective assistance of trial counsel to the state court, even though he argued in state court that his postconviction counsel had been ineffective on the same grounds); Brown v. Shanks, 185 F.3d 1122, 1125 (10th Cir. 1999) (holding that the petitioner failed to exhaust his claim that counsel was ineffective in failing to investigate an intoxication defense, even though the petitioner had argued in state court that counsel had "failed to raise significant and obvious issues," had misadvised him regarding the statute applicable to his conduct, and had failed to raise a double jeopardy claim) (internal quotation marks omitted); Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir. 1993) (holding that the federal court could not review the petitioner's claim that his counsel was ineffective in failing to advise him on a voluntary intoxication defense because the petitioner had argued in state court only that counsel was ineffective in failing to advise him on an involuntary intoxication defense).

/8 28 U.S.C. sec. 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii)  a factual predicate that could not have been previously discovered through the exercise

of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

/9 Mr. Boyko has suggested that his investigation into the State's potential recalcitrance in producing the transcript may reveal that he has a claim under Brady v. Maryland, 373 U.S. 83 (1963). It would be premature for us to determine whether such a claim, not presented previously to the state courts, may now be considered.