In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1959

LAVELLE CHAMBERS,

Petitioner-Appellant,

v.

GARY R. MCCAUGHTRY, Warden,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97-C-289--Thomas J. Curran, Judge.

ARGUED NOVEMBER 2, 2000--DECIDED September 5, 2001


  Before HARLINGTON WOOD, JR., RIPPLE and
ROVNER, Circuit Judges.

  RIPPLE, Circuit Judge.  Petitioner
LaVelle Chambers was convicted in
Wisconsin state court in 1991 of one
count of felony murder as party to a
crime and one count of being a felon in
possession of a firearm. The court
imposed a term of fifty years'
imprisonment on the felony murder charge
and eight years' imprisonment on the
felon in possession charge. The sentences
were to run consecutively. After
unsuccessfully appealing his conviction
in the Wisconsin state courts, Mr.
Chambers filed a petition for habeas
corpus in the United States District
Court. The court denied the writ. For the
reasons set forth in the following
opinion, we affirm the judgment of the
district court.

I

BACKGROUND

A.  Facts

  On November 18, 1990, Mr. Chambers and
his friend, Eddie Brooks, were driving
around in Brooks' car with the intention
of committing robbery. As they were
driving near North Avenue and 25th Street
in Milwaukee, they noticed two men

exiting the North Avenue Smoke Shop; these two individuals were pushing a safe. Brooks stopped the car. Both Mr. Chambers and he jumped out and accosted the men pushing the safe. The men told Brooks and Mr. Chambers that they had just broken into the smoke shop and that they had stolen the safe. They further indicated that the shop remained open and could be robbed of other items.

Brooks and Mr. Chambers ran into the smoke shop and stole various items--guns, money, and food stamps. As the pair was looking around the shop for other items to steal, a police scanner in Brooks' possession indicated that the police were being dispatched to the smoke shop.

As Brooks and Mr. Chambers left the shop, they noticed a dark blue police car located a short distance away on North Avenue. The officers in the car apparently spotted them, made a U-turn, and drove toward the store. Brooks and Mr. Chambers then ran west on North Avenue in an attempt to flee the scene. After approximately 100 yards, the pair split up and ran in different directions. Mr. Chambers hid under a porch and eventually was found and arrested by the police. While Mr. Chambers was hiding un der the porch, Brooks engaged the pursuing police officer in gunfire. A bullet shot by Brooks struck and killed Sergeant Michael Tourmo.

B.  Earlier Proceedings

1.

Mr. Chambers was tried for felony murder as party to a crime and for being a felon in possession of a firearm. The jury convicted Mr. Chambers of both counts. He was sentenced to a term of fifty years' imprisonment on the felony murder charge and eight years' imprisonment on the felon in possession charge. The sentences were to run consecutively.

2.

Mr. Chambers appealed his conviction to the Wisconsin Court of Appeals. He raised three arguments: (1) a juror was improperly excluded for cause during voir dire proceedings; (2) the evidence at trial was insufficient to convict him of felony murder, party to a crime, when the

felony was completed, and Brooks and he had separated before Brooks shot and killed the police officer; and (3) the jury instruction that "a crime is not complete until a successful escape is made"/1 impermissibly directed a verdict against Mr. Chambers because the point of completion of a crime cannot be decided as a matter of law; rather, it is within the province of the jury to decide whether the death was caused while committing or attempting to commit a crime.

The state appellate court only addressed Mr. Chambers' second argument and found that sufficient evidence existed to convict him. Specifically, the state court determined that the "conduct undertaken by Chambers, as an accomplice to armed burglary, falls within the ambit of the felony murder statute." State v. Chambers, 515 N.W.2d 531, 533 (Wis. Ct. App. 1994). The court held that the evidence only needed to show that Mr. Chambers committed one of the underlying felonies specified in the state felony murder statute; Wisconsin law does not require that a defendant have an intent to kill or directly cause the death of a third party. The state met this burden, the court concluded. See id. at 534-35.

On June 14, 1994, the Wisconsin Supreme Court denied review.

3.

After the Wisconsin Supreme Court denied review of his direct appeal, Mr. Chambers filed a motion for postconviction relief in the trial court. He again challenged the jury instruction given at his trial that, for purposes of felony murder liability, "a crime is not complete until a successful escape is made." Mr. Chambers contended that the instruction violated his right to due process of law under the Fourteenth Amendment of the federal Constitution because it relieved the state of its burden of proving all elements of the offense of felony murder, in violation of Sandstrom v. Montana, 442 U.S. 510 (1979).

The trial court denied Mr. Chambers' motion for postconviction relief because it found the petition to be "predicated on the same reasons set forth in his appeal which was decided against him."

R.14, Ex.K at 2. This repetitiousness was dispositive, the court explained, because claims resolved against a defendant on direct appeal cannot be reasserted in a subsequent postconviction motion. Even if the claim were characterized as new, continued the court, it was barred by State v. Escalona-Naranjo, 517 N.W.2d 157 (Wis. 1994), which prohibits defendants from raising claims on collateral attack if they do not first raise them on direct appeal unless there are sufficient reasons for the defendant's failure to present the claim on direct appeal.

4.

Mr. Chambers appealed the trial court's denial of his motion for postconviction relief to the Wisconsin Court of Appeals. He argued that the jury instruction violated his due process rights because it relieved the state of its burden of proving all elements of the offense of felony murder. Specifically, the instruction directed the jury to assume an essential element of the offense--that Mr. Chambers caused the death of Officer Tourmo while committing or attempting to commit the predicate offense of armed burglary.

The appellate court concluded that the trial court properly denied Mr. Chambers' motion. It found that the argument regarding the jury instruction was predicated upon the same factual basis as his contention on direct appeal that there was not enough evidence to convict him because he was not present when the murder occurred. Because this issue was adjudicated finally against Mr. Chambers on direct appeal, the state appellate court held, he could not again raise it. Moreover, even if the jury instruction challenge were construed as a new and independent claim, it was barred by Escalona-Naranjo because Mr. Chambers failed to show sufficient reason for not raising the argument on direct appeal.

The Wisconsin Supreme Court again denied review on April 6, 1999.

5.

Mr. Chambers next sought a writ of habeas corpus in the United States District Court. See 28 U.S.C. sec. 2254. Initially acting pro se, Mr. Chambers

first filed his habeas petition on March 24, 1997. The district court dismissed the petition without prejudice so that Mr. Chambers could pursue the postconviction relief in the Wisconsin courts that we have detailed above. On April 24, 1999, after he had exhausted his opportunities for state postconviction relief, Mr. Chambers refiled his petition and asserted that (1) the evidence adduced at trial was insufficient to convict him of felony murder and (2) the jury instruction that "a crime is not complete until a successful escape is made" violated his due process rights by relieving the state of its burden of proving all elements of the offense of felony murder beyond a reasonable doubt.

The case was assigned to a magistrate judge, who recommended, on April 29, 1999, that the petition be denied and the action dismissed. The magistrate judge believed that the evidence used to convict Mr. Chambers under Wisconsin's definition of felony murder was sufficient, and, "to the extent that Chambers claims the Wisconsin courts improperly construed Wisconsin state law, such [a] claim cannot support federal habeas relief." R.11 at 11. The magistrate judge also rejected Mr. Chambers' second claim, characterizing the challenge to the jury instruction as one based upon an incorrect application of state law, again not a basis for federal habeas relief.

Mr. Chambers objected to this recommendation. The district court, upon considering Mr. Chambers' objections to the recommendation, declined to accept the magistrate judge's conclusions and ordered that the State file an answer along with transcripts of the state court proceedings. The district court remanded the case to the magistrate judge for a recommendation on the merits.

The magistrate judge then granted Mr. Chambers' request for appointment of counsel and set up a briefing schedule. After receiving the briefs, the magistrate judge again recommended that the habeas petition be denied and the action dismissed. Specifically, the magistrate judge disposed of Mr. Chambers' two claims in almost the identical manner as he had in the

previous recommendation. The magistrate judge also noted, however, that Mr. Chambers' court-appointed counsel had created a third argument in his brief by placing a "slightly different twist" on the due process claim. R.26 at 12. Counsel contended that the jury instruction amounted to an ex post facto application of the state felony murder statute; the element of felony murder that requires that a death occur while the defendant was committing or attempting to commit armed burglary had not been construed to include a death that occurs while the accomplices are escaping the scene of an armed burglary.

Although the magistrate judge indicated that the claim may have been procedurally defaulted and not exhausted in the state courts, he addressed the merits nonetheless. He concluded that Wisconsin law at the time of the offense clearly rendered Mr. Chambers liable as a party to felony murder and that Mr. Chambers was on reasonable notice that he could be charged with and convicted of a murder committed by his confederate if that murder were committed during the course of an attempted escape from an armed burglary.

In a decision and order dated February 29, 2000, the district court adopted the magistrate judge's recommendation and ordered that Mr. Chambers' habeas petition be dismissed. A judgment of dismissal was entered the same day. In another order issued March 3, 2000, the district court denied Mr. Chambers' motion for reconsideration. This appeal followed.

II

DISCUSSION

Mr. Chambers appeals the district court's disposition of his habeas petition. He contends that he is entitled to a writ of habeas corpus because the state trial court's instruction to the jury that "a crime is not complete until a successful escape is made" violated his right to due process guaranteed by the Fourteenth Amendment by retroactively imposing a broader, unexpected definition of felony murder. The State, however, claims that Mr. Chambers failed to exhaust this claim and, therefore, has

procedurally defaulted it. Even if he has not, the State argues, the jury instruction was not constitutionally infirm.

## A. Procedural Default

A federal district court may not grant a writ of habeas corpus unless the petitioner has exhausted his state court remedies. See 28 U.S.C. sec. 2254(b)(1)(A). Failure to exhaust available state court remedies constitutes a procedural default. See Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999). To avoid procedural default, a habeas petitioner must have presented fully and fairly his federal claims to the state courts before he may obtain federal review of those same claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); see also Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." Rodriguez, 193 F.3d at 916; see also Howard, 185 F.3d at 725. The petitioner must have placed both the operative facts and the controlling legal principles before the state courts. See Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir. 2001); Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). A mere "passing reference" to a constitutional issue certainly does not suffice. Fortini v. Murphy, 257 F.3d 39, 44 (1st Cir. 2001).

When applying these standards, federal courts should "avoid hypertechnicality." Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992). A petitioner may reformulate his claims as long as the substance of the argument remains the same. See Picard v. Connor, 404 U.S. 270, 277-78 (1971) ("Obviously there are instances in which the ultimate question for disposition will be the same despite variations in the legal theory or factual allegations urged in its support. . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.") (internal citations and quotation marks omitted); see also Boyko v. Parke, 99-3771, 2001 WL 863598, at *6 (7th Cir. July 27, 2001). Mere "variations in the same claim rather than a different legal

theory will not preclude exhaustion."
Wilks v. Israel, 627 F.2d 32, 38 (7th
Cir. 1980).

A petitioner's reformulation of his
claim, however, should not "place the
claim in a significantly different
posture by making the claim stronger or
more substantial." Boyko, 2001 WL 863598,
at *6. We previously have noted that the
"leeway afforded to habeas petitioners in
'reformulating' due process arguments is
much more limited than in other
constitutional contexts." Kurzawa v.
Jordan, 146 F.3d 435, 443 (7th Cir. 1998)
(explaining that what the petitioner
requested was "much more than a mere
reformulation of his arguments--he has
raised two entirely new, separate due
process arguments on collateral appeal").
Mere similarity of claims is insufficient
to exhaust. See Picard, 404 U.S. at 276.

Given these principles, we must conclude
that Mr. Chambers has failed to exhaust
his claim and, consequently, has
committed a procedural default. As the
state points out, Mr. Chambers raised an
entirely new and distinct challenge to
the jury instruction in his brief to the
district court. He argued for the first
time that the instruction constituted a
retroactive interpretation of the felony
murder statute in violation of his right
to due process, as set forth in Bouie v.
City of Columbia, 378 U.S. 347, 353-54
(1964). This argument had not been
presented squarely to the state courts or
even in the habeas petition itself./2
Rather, Mr. Chambers consistently argued
to the state courts that the jury
instruction was violative of due process
because it relieved the state of its
burden of proving all elements of the
offense of felony murder beyond a
reasonable doubt. His mention of the ex
post facto argument was in a footnote in
the middle of an argument on another
point. This passing reference hardly
placed the Wisconsin courts on notice
that he was presenting the argument as an
independent basis for relief. Nor did
this reference present the state
appellate court with sufficient
elaboration, especially in terms of the
relevant federal and Wisconsin case law,
now cited prominently in the current
appeal before us, to permit that court to
decide the issue. Cf. Howard, 185 F.3d at
726 (holding that a footnote reference

that presented neither the legal nor factual basis of the petitioner's claim of ineffective assistance of trial counsel was not sufficient to preserve it for habeas review). In short, the single reference buried in a footnote in an argument on another contention hardly alerted the state judges, as a practical matter, that Mr. Chambers was seeking relief on the ground now argued at length before us. See Bocian v. Godinez, 101 F.3d 465, 469 (7th Cir. 1996) (noting that a "single reference" to the Fourteenth Amendment and the Supreme Court case of Furman v. Georgia, 408 U.S. 238 (1972), did not sufficiently alert the Illinois court to the petitioner's vagueness claim).

Although Mr. Chambers has challenged the same jury instruction at each level of appellate review, the gravamen of the unfairness about which he complains has changed. The ex post facto argument, like the burden-shifting claim, is a due process argument, but it alleges a distinct violation--that a court, by retroactively expanding the definition of a crime, has done what the legislature is forbidden by the Ex Post Facto Clause from doing. See Bouie, 378 U.S. at 353-54 ("If a state legislature is barred by the Ex Post Facto Clause from passing . . . a law, it must follow that a [state court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction."). As courts have noted in the past, we must look beyond the due process label to a more meaningful level of specificity. See Duncan v. Henry, 513 U.S. 364, 366 (1995) (noting that the petitioner's failure to raise a particular due process argument in state court "is especially pronounced in that [the petitioner] did specifically raise a due process objection before the state court based on a different claim . . . . [M]ere similarity of claims is insufficient to exhaust."); Riggins v. McGinnis, 50 F.3d 492, 494 (7th Cir. 1995) (noting that due process is "such a ductile concept that phrase-dropping is the equivalent of no argument at all"); Wilks, 627 F.2d at 38 (concluding that the petitioner failed to exhaust; although the "claim he presented to the trial court arises out of the same factual circumstance as the constitutional claim, it is a separate legal issue").

Because Mr. Chambers did not present his retroactivity issue to the state courts, he has procedurally defaulted on this contention./3

B.  Merits

We have determined that Mr. Chambers has procedurally defaulted on his claim, and the judgment of the district court is affirmed on this ground alone. If we were to reach the merits, however, we still would affirm the judgment of the district court.

Mr. Chambers notes that the felony murder statute under which he was convicted applies only to deaths caused while committing or attempting to commit a specified felony. At the time of Mr. Chambers' offense, no Wisconsin appellate opinion had construed this language to include deaths caused after fleeing the scene of a felony. By instructing the jury that a "crime is not complete until a successful escape is made," Mr. Chambers contends, the state trial court expanded the scope of the felony murder statute. It announced and retroactively imposed a new, broader definition of felony murder in contravention of the Fourteenth Amendment. Mr. Chambers relies on the decision of the Supreme Court of the United States in Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964). In that case, the Supreme Court held that courts may not enlarge criminal statutes to punish past conduct. Specifically, an

unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, sec. 10 of the Constitution forbids. . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

The State claims that the Wisconsin courts properly interpreted and applied the state felony murder statute. It claims that case law in existence at the time Mr. Chambers committed the offense at issue plainly rendered him liable as a party to felony murder.

Our inquiry becomes, therefore, whether

the conviction in this case amounted to a constitutionally impermissible enlargement of the scope of the Wisconsin felony murder statute. We agree with the district court that the decision of the Wisconsin courts cannot be so characterized.

In support of his argument, Mr. Chambers relies upon two Wisconsin decisions, Brook v. State, 123 N.W.2d 535 (Wis. 1963), and Hoffman v. State, 59 N.W. 588 (Wis. 1894). In Brook, two brothers, driving home after committing a burglary, were stopped by a police officer for a traffic violation. Although the officer was not aware of the burglary, the defendant and his brother shot him, fearing discovery. The defendant appealed after being convicted of first-degree murder, arguing that the jury should have been permitted to convict on felony murder as a lesser-included offense.

The court rejected the argument, holding that the killing was not a "natural or probable consequence of the commission of the prior burglary" within the meaning of the felony murder statute nor did it "occur by reason of or as part of [the] burglary." Id. at 540. There was no connection between the burglary and the traffic stop; no evidence was offered that established that the burglary had been detected when the officer stopped the defendant's car. See id. at 539-40.

Notably, Brook did not involve an escape; the burglary and the killing were perceived by the court as two distinct events. Further, there was no hot pursuit; the officer noticed a dangling licence plate and pulled the defendant over to inspect. In Mr. Chambers' case, in contrast, the burglary and the killing were related--to the point that the events might be considered part of the same res gestae. Clearly, the killing of the pursuing police officer was committed to bring the burglary to a successful conclusion; the officer was pursuing Mr. Chambers and his partner when the killing occurred. Indeed, in Hoffman, 59 N.W. at 592, the Wisconsin Supreme Court noted that a legal relationship must exist between the felony and the killing such that the "killing occurred by reason and as a part of the felony." Hoffman, like Brook, also did not involve an escape and hot pursuit from the scene of a crime.

Despite its factual differences with Mr. Chambers' case, Brook does contain wording that, when read in isolation, might be supportive of Mr. Chambers' position. The Supreme Court of Wisconsin wrote in dicta:

We entertain grave doubt that, if the killing had actually occurred during a hot pursuit of defendant and his brother from the scene of the burglary, it would have been 'a natural and probable consequence of the commission' of the burglary within the meaning of sec. 940.03, Stats.

Brook, 123 N.W.2d at 539. This dicta from Brook does not stand in isolation in the jurisprudence of Wisconsin. In a later case, State v. Pharr, 340 N.W.2d 498 (Wis. 1983), the Supreme Court of Wisconsin substantially clarified thegoverning principles in this area. The defendant, Pharr, together with Timothy and Sharon Rice, robbed a home in Rock County, Wisconsin. On their drive back to Madison (Timothy Rice was driving), a state trooper stopped the car because he had observed it cross the center line of the road. The trooper saw a gun lying on the front seat. As he began to ask about the weapon, Timothy Rice grabbed the gun, fired several shots, and then sped away./4

The jury found Pharr guilty of attempted first-degree murder, party to a crime, on the theory that Pharr and Rice conspired to commit the underlying robbery and that Pharr shared Rice's intent to escape successfully at any cost. In affirming the conviction, the Supreme Court rejected the defendant's argument that the robbery and escape attempt were separate acts--specifically, that once the participants left the robbery scene and entered the highway to return to Madison, they had reached a safe harbor. The court explained:

Therefore, the defendant asserts, Rice's shooting was not a natural and probable consequence of the robbery because the robbery itself was over. We disagree with this reasoning. The robbery was not complete until a successful escape was made. In fact, the early morning return to Madison, with a car fully loaded with stolen goods shortly after a violent

armed robbery, was perhaps the most dangerous part of the whole episode in terms of detection and apprehension by the police.

Id. at 505.

Relatedly, in State v. Marshall, 284 N.W.2d 592 (Wis. 1979), the defendant was convicted of being a party to the crime of first-degree murder. The Wisconsin Supreme Court, in upholding the conviction, emphasized that party-to-a-crime liability is so broad that a defendant need not even be present during the commission of the crime:

From these facts we believe the jury could have reasonably inferred that either the defendant or one of his companions shot and killed Thomas West. It is not necessary that the defendant himself be the one who pulled the trigger. He was convicted not of directly committing the crime himself, but of being a party to the commission of it. Thus, it is only necessary for defendant to have been a willing participant. Such participation as would constitute aiding and abetting does not even require that the defendant be present during the killing.

Id. at 601.

Pharr and Marshall contribute significantly to an understanding of the law on when participation in a felony ends. The principal difference between Pharr and the instant case is that Mr. Chambers was not present when the shooting occurred. Marshall, however, establishes that, under Wisconsin's theory of being a party to a crime,/5 Mr. Chambers did not have to be present to be liable. Taken together, the cases indicate that Mr. Chambers can be held accountable under Wisconsin law./6

We note, moreover, that, after the decision of the state court of appeals in this case, the Supreme Court of Wisconsin explicitly declared in State v. Oimen, 516 N.W.2d 399 (Wis. 1994), that the felony murder statute "encompasses the immediate flight from a felony." Id. at 409. Indeed, the court noted that its decision was compatible with the majority of states. See id. at n.18.

Our reading of Oimen confirms our view that the application of the felony murder statute to Mr. Chambers was a matter of logical interpretation of the statute's purpose and not the sort of unpredictable shift in application that gives rise to the fundamental fairness concerns articulated in Bouie. Indeed, the Supreme Court of the United States has explained in the years since Bouie that the "touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997). In our view, Mr. Chambers was on reasonable notice that the Wisconsin felony murder and party-to-a-crime statutes had been construed to encompass his situation. Although an "unforeseeable application" of existing law deprives criminal defendants of due process, Douglas v. Buder, 412 U.S. 430, 432 (1973) (per curiam), no such unforeseeability existed here. Mr. Chambers was on notice that he could be charged with and convicted of armed burglary as well as any other crime that occurred as a "natural and probable consequence of the intended crime"-- including measures taken to effectuate an escape from the scene of the crime. He was not subjected retroactively to an expanded scope of liability. As we have noted, Bouie applies only to "unpredictable shifts in the law, not to the resolution of uncertainty that marks any evolving legal system." United States v. Burnom, 27 F.3d 283, 284-85 (7th Cir. 1994)./7

Conclusion

Mr. Chambers has procedurally defaulted his due process claim based on the ex post facto application of the felony murder statute to his attempted escape after committing armed burglary. In any event, we conclude that his argument is without merit. The opinion of the district court denying the writ of habeas corpus is therefore affirmed.

AFFIRMED

FOOTNOTES

/1 The challenged jury instruction read in pertinent part:

The second element [of felony murder] requires that the defendant or one he was intentionally aiding and abetting as party to a crime caused the death of Michael Tourmo while committing the crime of Armed Burglary. In this regard, a crime is not complete until a successful escape is made.

R.14, Ex.M, Doc.52 at 9.

/2 In his brief to the Wisconsin Court of Appeals during postconviction proceedings, Mr. Chambers did mention the Ex Post Facto Clause in a foot- note but only in passing and in the context of his argument that the jury instruction improperly shifted the burden of proof from the state to him. The footnote states:

As remarked in Hoffman v. State, 88 Wis. 166, 179, 59 N.W. 588, 592 (1894), the court held that: "It is not enough that the killing occurred soon or presently after the felony attempted or committed. There must be such a legal relation between the two that it can be said that the killing occurred by reason and as a part of the felony." It is clear and convincing from the facts in this case that Appellant was not in- volved in any way with the chase or fight of police and Brooks. Afterperforming the burglary the two men went their own separate ways. This provides the disassociation, separation, sever- ance, detachment, and split-up of the legal connection between the shooting and the burglary; this prevents the legal relation between the two events. We must note that the due process clause places judges under [the] same basic constraint as [the] ex post facto clause does for legisla- tures: new rules that increase punishment for crime, cannot be applied to conduct predating charge. United States Constitution Amendments, Articles 1, sec.sec. 9 clause 3, 10, clause 1; Amendments Fifth and Fourteenth, see also Collins v. Youngblood, 497 U.S. 37, 110 S. Ct. 2715 (1990).

R.14, Ex.I at 13.

/3 The Supreme Court of Wisconsin held in 1994 that an issue must be raised on direct appeal to be considered in a collateral motion. See State v. Escalona-Naranjo, 517 N.W.2d 157 (Wis. 1994). The case was decided on June 22, 1994. The previous rule, as set forth in Bergenthal v. State, 242 N.W.2d 199 (Wis. 1976), was that a constitutional claim not raised on direct appeal could be raised in a collateral attack.

We have held that the Escalona-Naranjo rule cannot be the ground of a procedural default for purposes of barring federal habeas review when

the state post-trial motion was filed after
Bergenthal but before Escalona-Naranjo. See Braun
v. Powell, 227 F.3d 908, 914 (7th Cir. 2000),
cert. denied, 121 S. Ct. 1164 (2001); Liegakos v.
Cooke, 108 F.3d 144, 145 (7th Cir. 1997) (on
petitions for rehearing) (per curiam) ("Our
opinion holds that prisoners whose direct appeals
came after Bergenthal v. State, but before Esca-
lona-Naranjo, are entitled to raise constitution-
al arguments in federal court under 28 U.S.C.
sec. 2254 without justifying their omission from
the briefs on direct appeal." (citation omit-
ted)).

Mr. Chambers' direct appeal was decided on
March 29, 1994, by the Wisconsin appellate court.
The state supreme court denied review on June 14,
1994. Because Mr. Chambers' direct appeal was
filed and decided before Escalona-Naranjo was
handed down, the rule articulated in that case
does not operate as a procedural bar here under
our rule set forth in Braun and Liegakos.

We note, however, that the Wisconsin courts
have construed Escalona-Naranjo as applying
retroactively. On collateral appeal, the trial
court held that a decision such as Escalona-
Naranjo that overrules or repudiates an earlier
decision generally applies retroactively. "If the
Escalona court did not intend to follow the
general rule of retroactive application, it would
have specifically held that its ruling applied
prospectively." R.14, Ex.K at 2.

Moreover, in affirming the trial court's denial
of the motion, the Wisconsin Court of Appeals
explained that the Seventh Circuit cases such as
Liegakos "concern the scope of federal habeas
corpus review, not the proper application of
retroactivity principles by Wisconsin courts to
criminal cases in this state." R.14, Ex.G at 3
n.1.

/4 We also note that Pharr does not deal directly
with the felony murder statute. Pharr was con-
victed of attempted first-degree murder as a
party to a crime. Yet, in order to show that
Pharr had, at the time of the murder, a community
of interests with Timothy Rice, the court relied
on the fact that, as they escaped, they were
still in the process of committing the robbery
they had jointly undertaken.

/5 Wisconsin's party-to-a-crime statute
reads as follows:

(1) Whoever is concerned in the commis-
sion of a crime is a principal and may be
charged with and convicted of the commis-
sion of the crime although the person did

not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if the person:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his or her mind and no longer desires that the crime be committed and notifies the other parties concerned of his or her withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

Wis. Stat. sec. 939.05.

/6 Mr. Chambers makes much of the difference between armed robbery, what Pharr committed, and armed burglary, what he committed. He contends that the nature of the specified felony will affect the point at which the felony is no longer being committed. According to Mr. Chambers, the court in Pharr relied on the asportation element of the robbery--that the defendant was engaged in carrying away the stolen items when he was stopped. Thus, the crime of robbery continues after the taking of the property is complete.

Burglary, in contrast, is complete upon the slightest entry into the premises if the entry is made with the requisite intent and without the consent of the person in lawful possession, Mr. Chambers submits. Similarly, armed burglary is connected by definition to a fixed premises. Because he committed armed burglary, his crime was complete upon fulfilling the elements of the crime and did not include the subsequent escape.

Our review of the court's decision in Pharr reveals no basis for the distinction that Mr. Chambers would have us draw. Pharr does not rely on the asportation element of robbery, but on the

practical consideration that the criminal act would not have been successful until "there was an undetected escape from the scene of the robbery and a return to the 'safe harbor' of Madison, where the stolen goods could have been disposed." Pharr, 340 N.W.2d at 505.

/7 Although Mr. Chambers argued in his habeas petition that there was insufficient evidence to convict him and that the jury instruction improperly shifted the burden of proof to him on an element of the offense of felony murder, he did not pursue these matters in his briefs to this court. Accordingly, we need not address those issues.