Edward HOWARD, Petitioner–
Appellant,

v.

William D. O'SULLIVAN, Warden,
Respondent–Appellee.

No. 98–2589.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1999.

Decided July 15, 1999.

Tracy McGonigle (argued), Office of the State Appellate Defender, First Judicial District, Chicago, IL, for Petitioner–Appellant.

Rebecca Zavett (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

On June 20, 1988, an Illinois jury convicted Edward Howard of murder. He challenged that conviction in direct appeals to the Illinois Appellate and Supreme Courts, and then later through a petition for collateral relief under the Illinois Post–Conviction Hearing Act, 725 ILCS 5/122–1 *et seq.*, which he also pursued through the state trial, appellate, and supreme courts. After those efforts bore no fruit, Howard turned to the federal district court. The district court denied his petition for a writ of habeas corpus, and now Howard is before us. Of the many grounds he has pressed in his six prior attacks on his

conviction, he presently argues only two: (1) that the Illinois trial court's admission into evidence of a .38 caliber pistol denied him a fundamentally fair trial, and (2) that his lawyers at trial were so ineffective as to deny him his Sixth Amendment right to counsel. Because the merits of these claims are not properly before us, we affirm the district court's decision to deny the writ.

## I

On November 29, 1986, police discovered Allen Nuccio's bullet-ridden body in the back of his tow truck, which had been parked in a vacant lot near his home. Nuccio was Howard's roommate, and both men were involved with drugs. Sometime that fall, Howard and his associates had begun to fear that Nuccio was an undercover police officer (they were wrong). One of Howard's friends, Tim Taylor, subsequently shot and wounded Nuccio in the apartment Howard and Nuccio shared. When Nuccio did not die immediately, Howard and another man, Thomas Bentley, carried Nuccio to a nearby alley, where they beat him. Howard then shot Nuccio several times in the head, neck, and chest using a .22 caliber pistol, leading at last to his death.

The evidence against Howard included Gidget Robbins' eyewitness testimony identifying Howard as the person who shot Nuccio in the alley, Bentley's testimony that he helped Howard carry Nuccio into the alley, Gidget Robbins' and Sean Dwyer's eyewitness testimony about the shooting in the apartment, and Chicago Police Detective Robert Lane's testimony that he observed fresh paint in Howard's apartment within two days of the murder. Another witness, Christine Robbins, testified that she overheard Howard voicing suspicion that Nuccio was a cop. She also saw Howard with a .22 caliber pistol the night of the murder, and she later heard him boast that he had killed Nuccio. Howard was sentenced to 36 years in prison.

## II

At Howard's trial, the state offered and the court accepted into evidence a .38 caliber pistol found in Howard's possession during a traffic stop several days after the murder. This gun bore no relation to the crime for which Howard was being tried, because Nuccio had concededly been murdered with a .22 caliber pistol. As the Illinois Appellate Court recognized, *People v. Howard*, 209 Ill.App.3d 159, 154 Ill.Dec. 56, 568 N.E.2d 56, 69 (1991), it was therefore error to admit the .38 caliber gun into evidence. *United States v. Reid*, 410 F.2d 1223, 1226 (7th Cir.1969); *People v. Jones*, 22 Ill.2d 592, 177 N.E.2d 112, 116 (1961). We have no reason to disagree with that assessment, but our role in this case is not to identify any and all errors at trial. Howard seeks a writ of habeas corpus, which a federal court can only issue when a constitutional right has been abridged. 28 U.S.C. § 2241(c)(3). Consequently, Howard must show that the evidentiary error was of such magnitude that it took on a constitutional dimension.

But first Howard faces a different hurdle. The district court, which considered and denied Howard's claim on its merits, did not certify this issue for appeal. In most circumstances, we will not entertain an appeal from the denial of a writ of habeas corpus without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Nevertheless, the lack of a certificate is not fatal to Howard's claim because, when a district court does not certify an issue for appeal, we may do so ourselves if we conclude that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Construing Howard's notice of appeal as a request for a certificate of appealability, Fed. R.App. P. 22(b)(2), we now consider whether his request should be granted.

To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamen-

tally fair trial. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757 (7th Cir.1976); *cf. Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). This means that the error must have produced a significant likelihood that an innocent person has been convicted. See *Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir.1992). Indeed, because of this high standard, evidentiary questions are generally not subject to review in habeas corpus proceedings. *United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir.1974).

This case is no exception to that general principle. Any prejudicial effect the .38 caliber pistol may have had on the jury cannot alone be responsible for Howard's conviction. The jury's finding is amply supported by other evidence, such as the testimony of witnesses who helped Howard carry Nuccio into the alley, who saw him shoot Nuccio there, who observed him with a .22 caliber pistol the night of the murder, and who later heard him brag about it. In the face of this powerful record, no rational person could think that the jury was swayed by the taint of multiple gun possession and rushed to convict an innocent man. Because Howard cannot raise a substantial claim that the erroneous admission of the gun into evidence violated his due process rights, we decline to issue a certificate of appealability.

## III

■ Howard next contends that his trial counsel was so ineffective as to deprive him of his Sixth Amendment right to representation. The district court reviewed this claim and denied it on its merits. After reviewing the record of proceedings before the state courts, we conclude that Howard procedurally defaulted this claim. As a technical matter, the district court therefore should not have reached it in its opinion. We note, however, that the rules for procedural default in habeas cases have become Byzantine in their complexity, and in some cases a district judge may be uncertain whether or not default has occurred. In that situation, the judge may wish to discuss an issue that is potentially defaulted, and we do not mean here to discourage that practice if it seems likely to save time in the long run.

Howard claims that his trial counsel failed to investigate and interview numerous potential alibi witnesses and to gather certain documentary evidence that might have cast doubt on the credibility of prosecution witnesses. According to Howard, potential witnesses Steve Miller and Jeff Estrada would have testified that Howard was with them in the bar on the ground floor of his apartment building rather than in his apartment or outside in the alley when Nuccio was murdered. He claims that Leroy McNamara would have testified that he spoke to Howard the night of the murder at the precise time at which prosecution witnesses placed him in his apartment, ingesting drugs. Tabitha and Jeany Wolford, Howard claims, could corroborate that they accompanied him to the Daley Center the morning Christine Robbins testified that Howard was elsewhere, bragging about killing Nuccio. Howard also claims that his employer could have corroborated that he was at work at the time that Robbins said she heard him in his apartment, arguing with Nuccio. (Of all of these potential witnesses, only Jeany Wolford provided an affidavit to the court. Were we to reach the merits of this claim, Howard's failure to submit supporting affidavits from these potential witnesses would severely hobble his case. See *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir.1987).) Howard blames his trial attorneys for not presenting these witnesses in his defense.

Howard also faults his counsel for failing to obtain certain records that he believes would have helped exonerate him. He complains that his counsel should have located an advertisement offering a reward for information relating to Nuccio's death, because he thinks this advertisement gave prosecution witnesses an incentive to fin-

ger him falsely. Records from the Daley Center, according to Howard, would have indicated his presence there when Christine Robbins claimed he was elsewhere, thereby undermining her credibility. Howard would also have had his counsel gather weather reports for trial, such as one showing thick fog at local airports the night of the murder, in the hopes that jurors would harbor greater skepticism toward the ability of eyewitnesses to have seen what they claimed.

■ Unfortunately, Howard has failed to preserve these claims for federal collateral review. Before a federal court can entertain a petition for habeas corpus, a state prisoner must exhaust her state remedies, presenting her claims fully and fairly to the state courts. 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, —— U.S. ——, ——, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir.1997). This requirement recognizes the state courts' duty to enforce federal law and ensures that they have had a meaningful opportunity to correct federal constitutional violations. *Boerckel*, —— U.S. at ——, 119 S.Ct. at 1732; *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ A petitioner presents her claims fully simply by pursuing all available avenues of relief provided by the state before turning to the federal courts. *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998). Having pursued both direct and collateral proceedings all the way to the Illinois Supreme Court, Howard has made use of every available state forum and presented his claims fully. Fair presentment, on the other hand, requires the petitioner to have given the state courts a meaningful opportunity to pass upon the substance of the claims she later presses in federal court. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). This Howard did not do.

The post-conviction relief petition Howard addressed to the state trial court discussed all of the witness-based claims and the Daley Center records issue in the context of a general ineffective assistance of trial counsel claim. So far, so good. But the appeals Howard pursued before the Illinois Appellate and Supreme Courts from that proceeding claim only that his *post-conviction* counsel, rather than his *trial* counsel, was ineffective—apparently because Howard's post-conviction appellate counsel did not believe that post-conviction counsel had done a good enough job of presenting Howard's ineffective assistance of trial counsel claim. (Here is a great irony: Howard's post-conviction appellate counsel is probably the least effective of the bunch precisely because of her decision to switch tactics. Not only did she fail to preserve Howard's ineffectiveness of trial counsel claim for habeas review, but she dropped that claim in favor of an obvious non-starter: Howard has never had a constitutional right to post-conviction counsel, so any ineffectiveness on his part could not have generated a constitutional injury warranting post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Morrison v. Duckworth*, 898 F.2d 1298, 1301 (7th Cir. 1990).)

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 119 S.Ct. at 1732. Howard presented his current claim to the state trial court, but by changing the basis of his argument between the trial court and the appellate court, Howard did not fairly present the question of ineffective assistance of trial counsel to the Illinois Appellate Court. Accordingly, he has procedurally defaulted that claim. See also *Momient–El v. DeTella*, 118 F.3d 535, 540 (7th Cir.1997) (failing to appeal issues raised in an Illinois post-conviction petition for relief results in procedural default on habeas review).

As a last ditch measure to ward off this conclusion, Howard contends that a footnote in his state appellate brief gave the appellate court a fair opportunity to pass on the substance of his current claim. It is true that the claims presented in state and federal courts need not be exact replicas of each other to satisfy the fair presentment requirement, see *Kurzawa*, 146 F.3d at 441, but the footnote to which our attention is directed presented neither the legal nor the factual basis of the ineffective assistance of trial counsel claim to the state appellate court. *Cf. Picard*, 404 U.S. at 278, 92 S.Ct. 509; *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir.1998). Like the rest of the brief, it discusses the work of post-conviction counsel. That is not enough to preserve a claim based on ineffectiveness of trial counsel for purposes of federal habeas corpus, for the simple reason that it is a different legal theory. And while the footnote does present some of the facts underlying the claim of trial counsel's ineffectiveness (indeed, it is in this footnote that the claims about the advertised reward and the weather reports make their only appearance before the state courts), nowhere does it discuss the failure to investigate the potential alibi witnesses, which is now that claim's main thrust. This footnote is not enough to save the day, or the petition.

Finally, although there are two exceptions to the procedural default rule, Howard satisfies neither. Procedural default will be excused if the petitioner can show cause and prejudice for her failure to exhaust her claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice. *Patrasso*, 121 F.3d at 301; *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996). Howard has made no showing of cause for his failure to exhaust, so we ask only whether our refusal to reach the merits might work a fundamental injustice.

Not in this case. Given the strength of the evidence we have already discussed, we have no reason to believe that Howard is an innocent man who has wrongly been convicted. What's more, Howard's defense attorneys have provided affidavits explaining their actions and the limitations they faced, and we see no indication that their performance fell below the *Strickland* standard of reasonable competence. *Strickland v. Washington*, 466 U.S. 668, 689–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because there is nothing to show that Howard was wrongly convicted or in fact denied meaningful representation at trial, we risk no fundamental miscarriage of justice by insisting that Howard should have presented his claims fairly to the state courts before pursuing them here.

We therefore DENY a certificate of appealability on the evidentiary issue and AFFIRM the district court's denial of Howard's petition for a writ of habeas corpus.