**Sandie Watts STARNS, Petitioner,**

v.

**Roger D. COWAN, Warden, Respondent.**

**No. 00–2328.**

United States District Court, C.D. Illinois, Danville/Urbana Division.

June 25, 2002.

Sandie Watts Starnes, Menard, IL, pro se.

Mary A. Fleming, Office of Illinois Attorney General, Chicago, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

On December 18, 2000, Petitioner Sandie Watts Starns filed a Petition for Writ of Habeas Corpus (# 1) pursuant to 28 U.S.C. § 2254, alleging that he had been unconstitutionally convicted of first-degree murder. Respondent Roger D. Cowan filed a Response (# 13) on October 9, 2001. The Petition for Writ of Habeas Corpus is now DENIED.

### FACTS

Petitioner was tried in a Champaign County, Illinois, circuit court for the murder of his twenty-eight-year-old neighbor, Denise Butler. A jury found him guilty on January 19, 1995, and he was sentenced to seventy years in prison.

On appeal, Petitioner argued four grounds for overturning his conviction: (1) that the trial court erred when it refused to admit hearsay testimony that another man had confessed to the crime; (2) that the trial court erred when it excluded, as inadmissible hearsay, evidence of the other man's intent to have the victim killed; (3) that the prosecution violated Petitioner's Sixth Amendment right to confront witnesses when it stated in closing arguments that Petitioner had been able to shape his testimony based on the statements of witnesses at trial; and (4) that the trial court erred in allowing the State to argue that Petitioner had raped the victim prior to killing her, even though no testimony was presented at trial that the victim was raped. The Illinois Appellate Court, Fourth Judicial District, affirmed the conviction on December 20, 1996, noting that

because Petitioner had not objected to the prosecutor's remarks at trial, and in the absence of plain error, his third basis for appeal was waived. *People v. Starns*, No. 4–95–0166 (Dec. 20, 1996) (unpublished order), slip op. at 12. On May 13, 1996, Petitioner's Petition for Leave to Appeal to the Illinois Supreme Court was denied, and on October 6, 1996, the United States Supreme Court denied certiorari. *Starns v. Illinois*, 522 U.S. 838, 118 S.Ct. 112, 139 L.Ed.2d 65 (1997).

Petitioner next filed a Petition for Post–Conviction Relief on October 1, 1997, arguing: (1) that he received ineffective assistance of counsel; (2) that the evidence did not support guilt beyond a reasonable doubt; and (3) that the jury venire had been unconstitutionally called. This petition was denied by the state circuit court on November 6, 1997, as being without merit. Petitioner appealed, claiming only one issue: that his counsel was ineffective for not raising the question of reasonable doubt on direct appeal. The appellate court affirmed the conviction on October 13, 1999. The court's opinion held that Petitioner's argument was not stated in his original post-conviction petition. *People v. Starns*, No. 4–97–1136 (Oct. 13, 1999) (unpublished order), slip op. at 3. The court noted that Petitioner had claimed both ineffective assistance of counsel and lack of proof beyond a reasonable doubt, but had never related the two issues. *Starns*, No. 4–97–1136, slip op. at 4. The court then held that, even if the petition were broadly construed to encompass the current argument, it was still properly dismissed as frivolous. *Starns*, No. 4–97–1136, slip op. at 4. Petitioner requested leave to appeal to the Illinois Supreme Court. His petition was denied on February 2, 2000.

On December 18, 2000, Petitioner filed a Petition for Writ of Habeas Corpus, alleging that he was unlawfully held on three separate grounds. First, he argued that his right to due process of law was violated by the exclusion of testimony that another man had offered money to have the victim killed. Second, he claimed that the prosecutor deprived him of his right to confront witnesses by commenting in closing arguments that Petitioner was able to tailor his testimony based on the statements of other witnesses at trial. Finally, Petitioner argued that his counsel rendered ineffective assistance by not raising the question of reasonable doubt on direct appeal. Respondent filed a Motion to Dismiss (# 6) arguing that the Petition was barred by the statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This motion was denied on August 3, 2001.

## ANALYSIS

### I. Exhaustion of State Remedies

As a preliminary issue, Petitioner must have exhausted his state remedies before seeking habeas corpus review: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State … if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). If state remedies have not yet been exhausted, the petition is barred. *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir.1992). Respondent concedes that Petitioner has exhausted all available state remedies. This court therefore holds that this threshold requirement has been met.

### II. Exclusion of Exculpatory Evidence

■ Petitioner's first argument is that his right to due process of law under the Fifth and Fourteenth Amendments, as well as his Sixth Amendment right to present a defense, were violated when the trial judge excluded, on grounds of hearsay, a witness' statement that the victim's boyfriend once offered $300 to have her killed.

The excluded statements lent some support to Petitioner's general theory of the case: that he is innocent and another man is responsible for the murder. Respondent argues only that the claim is noncognizable because state evidentiary rulings are matters of state law and are thus not subject to federal review. Because Respondent does not raise the defense of procedural default, presenting it only in response to Petitioner's other two grounds for relief, this court will not consider the issue. *See Henderson v. Thieret,* 859 F.2d 492, 498 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989).

It is true that federal courts "do not sit to correct errors made by state courts in the interpretation and application of state law." *Williams v. Lane,* 826 F.2d 654, 659 (7th Cir.1987). But Petitioner is arguing that this particular state law violated his right to due process by imposing an impermissible double standard under the rules of evidence. As Respondent concedes, state evidentiary rules are cognizable if they "compromise[ ] the petitioner's due process right to a fundamentally fair trial." *Howard v. O'Sullivan,* 185 F.3d 721, 723–24 (7th Cir.1999). This court therefore cannot be barred from reviewing the constitutionality of state rules merely because the rules in question are evidentiary in nature. *See Chambers v. Mississippi,* 410 U.S. 284, 313, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.").

■ Under the AEDPA, the role of a federal court in a habeas proceeding when a state court has already ruled on the merits of an issue is ordinarily limited to determining whether the "state court's decision was contrary to clearly established caselaw by the Supreme Court, or alterna-tively, that the state court's decision was an unreasonable application of Supreme Court caselaw." *Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996). However, "[a] prerequisite for applying this section is that the state court adjudicated the issue ... on the merits." *Moore v. Parke,* 148 F.3d 705, 708 (7th Cir.1998). In Petitioner's appeal, the state court limited its opinion to the proper application of state rules of evidence, with no discussion of any due process ramifications of those rules. Therefore, "the new standard of review in AEDPA does not apply" and this court must examine the issue of due process de novo. *Moore,* 148 F.3d at 708.

Petitioner argues that the application of the hearsay rules to his case creates an unconstitutional double standard depriving him of due process of law. The problem arises out of the testimony of a witness, Willie Rushing, at the offer of proof. Rushing said that another man, James Miller, had offered him $300 to have Denise Butler killed. Miller was the father of Butler's child, and had lived with her until about a week before the murder, when a domestic dispute led Butler to obtain an order of protection against him. Apparently because Butler suffered from issues of alcoholism and mental illness, the state took away their daughter shortly after her birth, and Miller blamed Butler for their inability to regain custody. At one point, according to Rushing, Miller said: "I've got $300 of her money now. You want $300? Kill her. I'll give you the $300." The trial judge ruled that in order to present this hearsay statement at trial, Miller would first have to be called as a witness, and Rushing's testimony could then be used only to impeach Miller's statements. However, while on the stand Miller was never asked about the offer of $300, so the judge did not allow Rushing to testify about the incident.

■ Petitioner argues that the state's rules of evidence are fundamentally unfair, since if he had been the one to offer $300 to kill Butler, the evidence would have been admissible under the state's "other crimes" exception to the hearsay rule. Under state law, a solicitation to commit murder is admissible as evidence against a defendant even if it never led to a criminal prosecution. *See generally People v. Thingvold*, 145 Ill.2d 441, 164 Ill.Dec. 877, 584 N.E.2d 89 (1991). Therefore, according to the state appellate court's interpretation of its rules of evidence, solicitation can be used by the prosecution to convict defendants, but not by the defendants to cast doubt upon their guilt. This rule, Petitioner argues, creates an "impermissible double standard" that deprived him of his right to a fair trial and due process of law.

■ This court is not at liberty to examine the correctness of the state courts' interpretation of their own "other crimes" evidentiary rule. Furthermore, the Supreme Court of the United States has never found this kind of double standard to be unconstitutional, and courts cannot create "new constitutional rules" in habeas corpus proceedings. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Because the narrow exceptions recognized by *Teague* do not apply to this case, Petitioner's argument therefore must be rejected. *See Teague*, 489 U.S. at 311–14, 109 S.Ct. 1060.

■ However, even if the rule is constitutional on its face, it may be unconstitutional as applied to Petitioner if it violated his right to present evidence critical to his defense. In *Chambers*, for example, the defendant was convicted of the murder of a police officer and was not allowed to present evidence that another man had confessed to the crime. The Supreme Court held that the exclusion of the hearsay evidence, in conjunction with other state rules of evidence, unconstitutionally deprived the defendant of due process of law. The Court wrote that the "rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers*, 410 U.S. at 308, 93 S.Ct. 1038. *Chambers* and other cases have recognized that "states must permit defendants to introduce reliable third-party confessions when direct evidence is unavailable." *Gacy v. Welborn*, 994 F.2d 305, 316 (7th Cir.1993), *cert. denied*, 510 U.S. 899, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993).

But *Chambers* nevertheless does not give the defendant "an unfettered right to present evidence, even relevant evidence." *Morgan v. Krenke*, 232 F.3d 562, 567 (7th Cir.2000), *cert. denied*, 532 U.S. 951, 121 S.Ct. 1423, 149 L.Ed.2d 363 (2001). To determine whether a defendant has the right to present certain evidence, the Seventh Circuit uses a balancing test, weighing the state's "legitimate interest in formulating rules of evidence to conduct its trials" against Petitioner's "need for the evidence and the evidence's trustworthiness." *Sharlow v. Israel*, 767 F.2d 373, 377 (7th Cir.1985), *cert. denied*, 475 U.S. 1022, 106 S.Ct. 1212, 89 L.Ed.2d 324 (1986). Because the trustworthiness of the evidence in this case does not rise to the level found in *Chambers*, this balancing test weighs against Petitioner and toward upholding the jury's verdict.

In *Chambers*, the excluded confessions were "originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Chambers*, 410 U.S. at 300, 93 S.Ct. 1038. In the present case, both the state trial and appellate courts independently examined the reliability of the excluded statement and concluded that it lacked the "indicia of trustworthiness" required for admission of hearsay evidence.

*Starns,* No. 4–95–0166, slip op. at 11. As the appellate court wrote: "Rushing himself stated he did not believe Miller intended an offer of $300 to kill [Butler], but merely that Miller was blowing off steam." *Starns,* No. 4–95–0166, slip op. at 11.

Under the AEDPA, a state court's findings of fact are presumed to be correct unless Petitioner can rebut the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner cannot meet that burden. This case differs significantly from *Chambers* because, in that case, the excluded testimony was a confession, whereas here the statement is not as clearly exculpatory. Just because Miller offered money to have Butler killed doesn't mean that he was ultimately responsible for her death, especially when there is no corroborating physical evidence of Miller's involvement in the crime. Furthermore, Willie Rushing testified at the offer of proof that even he did not believe Miller was serious about the proposition. Rushing stated: "We all play like that, we play games like that, you know. And he just— I just blew it off like he didn't mean anything. . . ." While Petitioner maintains that issues of trustworthiness are properly left for the consideration of a jury, the reliability of excluded evidence must be examined to determine whether there has been a due process violation. In the present case, the evidence falls short of the "persuasive assurances of trustworthiness" found in *Chambers,* 410 U.S. at 313, 93 S.Ct. 1038.

Furthermore, in *Chambers* the exclusion of hearsay evidence was combined with a state "voucher" rule that prevented the defendant from cross-examining the declarant on the stand. In Petitioner's case, however, no rule restricted Miller from being examined about his alleged statements. The Supreme Court has indicated an unwillingness to expand *Chambers* beyond it's specific factual circumstances, writing that "*Chambers* was an exercise in

highly case-specific error correction" which held only that "erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Montana v. Egelhoff,* 518 U.S. 37, 52–53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). Inclusion of Miller's alleged out-of-court statements were not as critical to Petitioner's case as they were in *Chambers* because he was allowed to examine Miller about them directly.

Petitioner's interest in presenting the statement must next be weighed against the state's interest in excluding unreliable evidence. *See, e.g., United States v. Scheffer,* 523 U.S. 303, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("State and federal governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules."). The rationale for excluding these hearsay statements is that "the conditions of oath, cross-examination, and demeanor observation did not prevail at the time the statement was made and cannot adequately be supplied by the later examination." Fed. R.Evid. 801, advisory committee's note. *Chambers* made it clear that courts were to continue to give the "respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Chambers,* 410 U.S. at 313, 93 S.Ct. 1038. The state's choice of evidentiary rules must be respected in the face of unreliable evidence, and Petitioner's first ground for relief is therefore denied.

### III. Right to Confront Witnesses

Petitioner next contends that his Sixth Amendment right to confront witnesses was violated when the prosecutor commented during closing arguments that he was able to tailor his testimony by listen-

ing to the statements of witnesses at trial. When police questioned Petitioner about the murder, he initially denied ever having sexual intercourse with Butler. His claim was undercut, however, by evidence presented by the prosecution showing that his semen stains were found on a sheet in Butler's apartment. When Petitioner took the stand, he changed his story, admitting that he engaged in sexual acts with Butler on the afternoon of July 23, 1993, but claiming that he did not consider the activity to be sex because he had withdrawn before ejaculation.

During closing arguments, the prosecutor pointed out the inconsistency in Petitioner's statements, suggesting that he had the opportunity to change his testimony after listening to the witnesses against him. The prosecutor stated:

> Now I know you listened carefully to that [DNA] evidence and some of you took notes. So did [Petitioner]. And then he hops up there yesterday and says, "Well, I had sex with her." Why was this [DNA] analysis conducted? Because throughout the interviews in the case [Petitioner] said, "I did not have sex with her." He denied it. He never talked about it. He never discussed any of the things he talked about yesterday in his testimony. And yesterday, after sitting through that DNA testimony and realizing that that's right there on the sheet, then he says, "Well I had sex but it wasn't sex."

Petitioner argues that this comment deprived him of his constitutional right to confront witnesses against him, since the prosecutor appeared to be using Petitioner's presence in the courtroom to impeach his credibility. Respondent counters that this ground for relief is procedurally defaulted because Petitioner did not object at trial to the prosecutor's statements.

 When Petitioner raised this claim in his direct appeal, the appellate court noted that "[Petitioner] neither objected to the . . . remarks at trial nor included them in his post-trial motion," and thereby concluded that the issue was "subject to waiver for purposes of review in the absence of plain error." *Starms*, No. 4–95–0166, slip op. at 12. When a court clearly and expressly relies on a state procedural rule in denying a claim, that claim is procedurally defaulted and cannot be reviewed by a federal court in a habeas proceeding. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a state rule requiring contemporaneous objection at trial served as an adequate and independent state bar to federal review. The Court held that contemporaneous objection requirements serve an important purpose because they "enable[ ] the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding." *Wainwright*, 433 U.S. at 88, 97 S.Ct. 2497. Although the state appellate court did briefly reach the merits of the claim in reviewing whether it met the "plain error" exception to the contemporaneous objection rule, the Seventh Circuit has held that Illinois' procedural "safety valve" for cases of plain error "does not open up the merits any wider for consideration by the federal court." *Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996), *cert. denied*, 522 U.S. 834, 118 S.Ct. 104, 139 L.Ed.2d 58 (1997). *See generally Willis v. Aiken*, 8 F.3d 556 (7th Cir.1993), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1371, 128 L.Ed.2d 47 (1994).

 Petitioner's failure to object to the prosecutor's remarks at trial therefore means that he has procedurally defaulted this claim. However, a federal court may review even a defaulted claim if one of two

exceptions is met. The first exception applies when a petitioner can demonstrate: (1) "adequate *cause* to excuse his failure to raise the claim in state court" and (2) "actual *prejudice* resulting from the default." *Farrell v. Lane,* 939 F.2d 409, 411 (7th Cir.1991), *cert. denied,* 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). This court does not need to examine whether Petitioner had adequate cause for not raising the claim because he cannot meet the second requirement of actual prejudice. In *Portuondo v. Agard,* 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), the Supreme Court held that a similar prosecutorial comment did not violate the defendant's Fifth and Sixth Amendment right to be present at trial and confront witnesses, or his Fourteenth Amendment right to due process of law. The Court wrote: "Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate—and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth." *Portuondo,* 529 U.S. at 73, 120 S.Ct. 1119. Petitioner's claim, even if properly raised, would thus have ultimately failed, and he therefore suffered no prejudice from his failure to object at trial.

For the same reason, Petitioner cannot meet the second exception to the procedural default rule, which applies when "refusal to reach the merits might work a fundamental injustice." *Howard,* 185 F.3d at 726. Petitioner fails to meet this test because, based on *Portuondo,* none of his constitutional rights were violated. He therefore cannot meet either exception to the procedural default rule and this second ground for relief is denied.

## IV. Ineffective Assistance of Counsel

Petitioner's final argument is that he was denied his Sixth Amendment right to effective assistance of appellate counsel when his attorney failed to argue on direct appeal that he was not proven guilty beyond a reasonable doubt. Respondent counters that this claim was procedurally defaulted because Petitioner failed to raise it in his post-conviction petition and brought it up for the first time on appeal.

### A. Procedural Default

■ In his original petition, Petitioner raised the issue of ineffective assistance of counsel, but only in a "conclusory fashion," alleging in vague terms that "counsel did not function as an advocate for his client" and that "counsel on appeal did not attempt to assure that [Petitioner] receive[d] a full and fair review of the issues." *Starns,* No. 4–97–1136, slip op. at 3. Thus the appellate court found that Petitioner had failed to "plead sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right." *Starns,* No. 4–97–1136, slip op. at 3. Normally, the claim would therefore be procedurally defaulted because "a claim is not fairly presented and thus procedurally defaulted if it is done for the first time 'in a context in which the reviewing court exercises only discretionary review.'" *United States ex rel. Massie v. Cooper,* 1998 WL 566881, at *10 (N.D.Ill.1998), *aff'd sub nom. Massie v. Cowan,* 215 F.3d 1330, 2000 WL 554493 (7th Cir.2000).

However, the appellate court next noted that Petitioner had made a second argument in his petition that "no reasonable person, upon viewing the evidence in the light most favorable to the prosecution, could have found him guilty of murder." *Starns,* No. 4–97–1136, slip op. at 4. Although the court wrote that "[Petitioner] never related this allegation to his claim of ineffective assistance of counsel," it then went on to consider the merits of the claim in detail, holding that "[e]ven if [Petitioner's] petition were broadly construed to

encompass his current argument, the trial court still properly dismissed it." *Starns,* No. 4–97–1136, slip op. 4. It is not clear from the face of the opinion whether the appellate court rejected the claim because it considered the issue waived, or whether it in fact "broadly construed" the petition and rejected it on its merits.

 This case resembles *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Harris,* the petitioner also alleged ineffective assistance of counsel in a petition for post-conviction relief. The Illinois appellate court first wrote that he had not raised the issue on direct appeal, and that issues not raised on appeal are waived. But the court nevertheless went on to consider the claim on its merits, ultimately rejecting it. On review, the Supreme Court held that federal courts were not precluded from considering an issue unless the state court "clearly and expressly" rested its decision on a state procedural bar. In the present case, no such clear and express holding exists. The appellate court's decision should be distinguished from cases presenting two alternative grounds for a ruling, in which "the state court says that each ground is sufficient." *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383–84 (7th Cir.1990). Instead, because the court did not clearly reject the sufficiency of raising the ineffective assistance of counsel and reasonable doubt claims separately, its decision more closely resembles *Harris,* where the court "note[d] a procedural default and then ignore[d] it, reaching the merits instead." *Harris,* 489 U.S. at 258, 109 S.Ct. 1038. In the absence of a clear and express statement, this court is therefore not barred from reviewing Petitioner's claim on its merits. *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

## B. Standard of Review

 In order to demonstrate ineffective assistance of counsel, Petitioner must meet the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* Petitioner must show: (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 698, 104 S.Ct. 2052. Ineffective assistance of counsel is a mixed question of law and fact. *Porter v. Gramley,* 112 F.3d 1308, 1313 (7th Cir.1997), *cert. denied,* 522 U.S. 1093, 118 S.Ct. 886, 139 L.Ed.2d 873 (1998). Under the AEDPA, if the state court decided a mixed question on the merits, a federal court may only grant habeas relief "if the state court judgment involved an 'unreasonable application' of clearly established federal law, which means that 'a responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment.' " *Porter,* 112 F.3d at 1313 (*quoting Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir.1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). In this case, the state appellate court examined Petitioner's ineffective assistance of counsel claim in his postconviction proceeding and concluded that "counsel's decision not to raise the reasonable doubt issue in the prior appeal was not patently wrong." *Starns,* No. 4–97–1136, slip op. at 7. In reaching this conclusion, the court relied on *People v. Frank,* 48 Ill.2d 500, 272 N.E.2d 25, 27 (1971) ("It is not incompetence for counsel to refrain from raising those issues which in his judgment are without merit, unless his appraisal of the merits is patently wrong."). However, the proper standard for reviewing the federal constitutionality

of counsel's effectiveness is *Strickland,* which was decided after *Frank.* By reviewing the merits of Petitioner's claim under this "patently wrong" standard, the state court failed to "ask[ ] the legally correct question." *Lindh,* 96 F.3d at 876. This court must therefore independently evaluate his claim using the *Strickland* test.

### C. Merits

Petitioner cannot meet *Strickland's* second prong because he cannot demonstrate prejudice from his counsel's failure to raise the reasonable doubt issue on appeal. Petitioner fails to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052. In the post-conviction proceeding, the appellate court considered and rejected Petitioner's reasonable doubt claim, finding that "[t]hough the record presents some conflicting evidence, the physical evidence was clearly sufficient to support [Petitioner's] conviction." *Starns,* No. 4–97–1136, slip op. at 7. Therefore, even if the issue had been raised on direct appeal, the appellate court would have rejected it.

In analyzing a question of reasonable doubt in a habeas proceeding, a court is not at liberty to "make its own subjective determination of guilt or innocence." *Jackson v. Virginia,* 443 U.S. 307, 319 n. 13, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Instead, the proper question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. *Jackson* issues present mixed questions of law and fact, and thus under the AEDPA "a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unrea-

sonably applied the *Jackson* standard." *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997), *rev'd on other grounds sub nom. Gomez v. DeTella,* 522 U.S. 801, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997). If the state courts "provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson's* 'no rational trier of fact' test," then a federal court cannot second-guess their determination of sufficiency of evidence. *Gomez,* 106 F.3d at 199.

The state appellate court in this case focused on fingerprints in determining that the evidence was sufficient to support Petitioner's conviction. When Butler's body was found, she had suffered multiple blunt force injuries to her head and two stab wounds to her chest. Some of the head injuries were consistent with an electric iron lying near the body. Others matched a bloody claw hammer, rolling pin, and broken vase found nearby. The chest injuries were consistent with three knives found lying around the apartment, two with broken blades. Other items found in the area of the body included a bloodstained butter knife and a table fork. Four tiny puncture wounds on Butler's neck matched the table fork.

Investigators found one of Petitioner's fingerprints on the iron. Another was found on one of the broken knives, and his palm print was on the knife found next to the body. Petitioner attempted to explain the fingerprints on the ground that he and his wife were friends and occasional social guests of Butler. Petitioner told police that he had borrowed an iron, a hammer and other tools about a week before the murder. He said he used the iron in preparation for a job interview. He also stated that he had dinner at Butler's house about two months before the murder. Finally, he told police that he might have handled a knife while clearing a table at

Butler's home on July 23, shortly before the murder. Petitioner's fingerprints were not found on the hammer, the fork, or any of the other weapons at the murder scene.

■ Under Illinois law, fingerprint evidence alone is ordinarily not sufficient to dispel reasonable doubt unless the fingerprints are found "in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed." *People v. Rhodes*, 85 Ill.2d 241, 52 Ill.Dec. 603, 422 N.E.2d 605, 608 (1981). While a state court's interpretation of the *Jackson* standard is not binding on a federal court, it can serve as persuasive authority in interpreting the evidence required to convict on a state criminal offense. *Gomez v. DeTella*, 1998 WL 60387, at *5 (7th Cir.1998). In *People v. Donahue*, 50 Ill.App.3d 392, 8 Ill.Dec. 472, 365 N.E.2d 710 (1977), the defendant's fingerprint was found on a steam iron, the cord of which was tied around the neck of a murdered woman. There was some evidence that the defendant had been in the victim's apartment on a previous occasion. The jury convicted based on the fingerprint evidence alone, but the Illinois appellate court reversed, holding that the state did not prove that the fingerprint "could have been impressed only at the time the crime was committed." *Donahue*, 8 Ill.Dec. 472, 365 N.E.2d at 712. A defendant's fingerprints on the murder weapon, in themselves, would therefore ordinarily be insufficient to convict in Illinois when other evidence suggests that the defendant had legitimate access to the weapon. *See also Borum v. United States*, 380 F.2d 595 (D.C.Cir.1967) (reversing a conviction for housebreaking based on fingerprints on jars inside the home when the jars had previously been kept outside near a sidewalk); *United States v. Lonsdale*, 577 F.2d 923 (5th Cir.1978) (holding a fingerprint on a bad check insufficient to establish guilt beyond a reasonable doubt when the government had not demonstrated that defendant had no opportunity to touch the check prior to the crime).

However, as the state appellate court noted, the fingerprints on the knives in this case indicated that Petitioner had gripped them with his right hand and that he held one with the blade of the knife facing down. The fingerprint on the iron also showed that he held it with the tip pointing down, instead of up as if he had been ironing. Additionally, Petitioner admitted having intercourse with Butler at some point before the murder, and the jury was entitled to disbelieve his testimony that the sex was consensual. In making this determination, the jury may have considered Petitioner's credibility while on the witness stand, a consideration that federal courts may not review in a habeas context. *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). Bruises on Butler's body, and Petitioner's initial attempt to convince police that he had never had sexual intercourse with her, both support an inference that Petitioner had raped the victim shortly before her death. If the jury disbelieved Petitioner's explanations, it was "entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." *Wright*, 505 U.S. at 296, 112 S.Ct. 2482. While the evidence against Petitioner is not ironclad, it is stronger than the evidence available in *Donahue*, and a rational trier of fact could have found beyond a reasonable doubt that Petitioner used the knives and the iron as weapons to kill Butler.

This conclusion comports with the holding of the Seventh Circuit in *United States v. Wilson*, 922 F.2d 1336 (7th Cir.1991), *cert. denied*, 502 U.S. 850, 112 S.Ct. 155, 116 L.Ed.2d 120 (1991). In that case, a jury found the defendant guilty of illegal

possession of a firearm. The gun was found under a mattress in his girlfriend's apartment, marked with his partial fingerprint. The court noted that merely touching a firearm is insufficient to constitute possession, and that "[t]here were explanations available, fully consistent with innocence, which would have explained the print." *Wilson,* 922 F.2d at 1338. The defendant had access to the apartment, and might have brushed his hand against it while making the bed, for example. However, the court concluded that "after five-and-a-half hours of deliberation no juror found any of these possibilities sufficient to create a reasonable doubt as to Wilson's guilt, and we conclude that a jury could, within the province of rationality, convict Wilson based on the evidence." *Wilson,* 922 F.2d at 1339. Petitioner's fingerprints alone were therefore sufficient evidence, under *Wilson,* for a rational jury to convict him of murder.

Petitioner next raises several potential discrepancies in the evidence against him. First, he notes that only one hair of his type was found on the victim's body, while more hair would be expected if he had physically attacked her. Additionally, he claims that after finding a bloody footprint at the scene, police asked him if he possessed a pair of Nike shoes, size 9½. Petitioner states that the only Nike shoes he owns are size 11. Testimony at trial, however, indicated that police only obtained a partial shoe print and were unable to determine the exact shoe size. Although the evidence is somewhat conflicted, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781.

Finally, Petitioner argues that evidence of James Miller's involvement in the crime was sufficient to establish reasonable doubt. Although Miller's history of physical violence with Butler and her restraining order against him provide a possible motive for the murder, the prosecution "need not exclude, in a habeas proceeding, every reasonable hypothesis of innocence" in order to meet the "beyond a reasonable doubt" standard. *Brumley v. DeTella,* 83 F.3d 856, 862 (7th Cir.1996). As the state appellate court noted, no physical evidence linked Miller to the crime, and some of the hair found on the body and on a bloody towel nearby did not match Miller's type. A rational jury could therefore have disregarded the testimony about Miller and convicted Petitioner based on the evidence at the crime scene.

The appellate court's conclusion that the evidence was sufficient for a rational jury to find guilt was therefore a rational conclusion given the evidence in the case. The court "employed the proper *Jackson* standard in its analysis," and "carefully relied on evidence in the record to support its determination." *Gomez,* 106 F.3d at 200–01. The court's opinion was "within the bounds of reasonableness" and must thus be upheld because the "grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions." *Gomez,* 106 F.3d at 201 (*quoting Lindh,* 96 F.3d at 871).

Because this court must respect the state court's judgment regarding the sufficiency of the evidence, Petitioner cannot demonstrate that he was prejudiced by his counsel's failure to raise an unmeritorious claim, and he therefore cannot meet the second prong of the *Strickland* test. Additionally, Petitioner cannot meet *Strickland's* first prong: that "counsel's representation fell below an objective stan-

dard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Under *Strickland,* courts do not second-guess counsel with the benefit of hindsight, and can require only "a professionally competent defense, not … the best possible defense." *Holman v. Gilmore,* 126 F.3d 876, 883 (7th Cir.1997). In this case, Petitioner's attorneys raised four separate issues on appeal, but did not raise the reasonable doubt argument. As the Supreme Court wrote in *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (*quoting Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)), "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

When counsel fails to raise arguments on appeal, the Seventh Circuit compares these issues with those that are not raised, and "[o]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). Because Petitioner's reasonable doubt claim was not clearly more meritorious than other issues raised on appeal, his counsel was not ineffective for failing to argue it. This court must give a "strong presumption that counsel rendered reasonably effective assistance," *United States v. Limehouse,* 950 F.2d 501, 503 (7th Cir.1991), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992) (*citing Strickland,* 466 U.S. at 689, 104 S.Ct. 2052), and must assume that counsel's omission "might be considered a sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Petitioner has not met this high burden, and his ineffective assistance of counsel claim is therefore denied.

IT IS THEREFORE ORDERED:

(1) The Petition for Writ of Habeas Corpus (# 1) is DENIED.

(2) This case is terminated.