# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2672

LINNELL HARDING,

Petitioner-Appellant,

v.

JERRY L. STERNES, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 C 7515—**Matthew F. Kennelly**, Judge.

_____

ARGUED APRIL 6, 2004—DECIDED AUGUST 23, 2004

_____

Before RIPPLE, KANNE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge. Linnell Harding was convicted by a jury of armed robbery and possession of a stolen motor vehicle in relation to an armed carjacking. The Illinois Appellate Court rejected his appeal, and the Supreme Court of Illinois summarily denied his petition for leave to appeal. Mr. Harding then filed a petition for post-conviction relief in the state court that was unsuccessful. Mr. Harding then petitioned for federal habeas corpus relief. See 28 U.S.C. § 2254. The district court appointed counsel and granted

leave to file an amended petition. In this amended petition, Mr. Harding focused on two claims—ineffective assistance of counsel and the exclusion of evidence. The district court denied the petition. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I
# BACKGROUND

## A. Facts

On August 10, 1991, Rafael Colon had his car stolen at gunpoint. While Colon was stopped at an intersection, a man placed a gun to his head and ordered him out of his car. A second man lunged through the passenger-side window, shifted the transmission into park, turned off the ignition and took the keys. The gunman then took the victim's necklace from his neck. During this time, Colon was face-to-face with the gunman for approximately thirty seconds, and the scene was illuminated by streetlights. The gunman then told Colon to leave, and Colon complied.

After the incident, Colon contacted the police. Police reports described the gunman as a 5'9", 185-pound, thirty-year-old African-American male with black hair and brown eyes. The reports did not include any indication of visible scars and did not contain a description of the second assailant.

One week later, while responding to a disturbance call, the police officers found Colon's car at a house where Mr. Harding was present. Mr. Harding was arrested originally for disorderly conduct as a result of the disturbance. He gave the officers permission to "search my car." R.28, Ex.A at 2. The police found documents bearing Colon's name still in the vehicle. Mr. Harding was charged with armed robbery and possession of a stolen motor vehicle. Police placed Mr.

Harding, 5'7", 145 pounds and another suspect, Carl Page, 5'5", 140 pounds, in a lineup with four other men, who were 5'11" to 6'4" in height and weighed from 155 to 200 pounds. Colon identified both Mr. Harding and Page as the perpetrators, but the lineup identification was later suppressed as impermissibly suggestive.

## B. Trial Court Proceedings

At trial, Colon identified Mr. Harding as the perpetrator. According to Colon's testimony, he had seen Mr. Harding on five occasions prior to his in-court identification. These sightings occurred in the context of court proceedings in which Mr. Harding was clearly the subject of the prosecution. The state trial court found that Colon's face-to-face encounter with the gunman while his necklace was being removed provided a sufficient independent basis for identification and allowed the in-court identification.

Mr. Harding presented a defense of alibi and mistaken identity. He testified that he was recovering from unrelated injuries at his mother's home when Colon's car was stolen. On the date the crime allegedly occurred, part of his head was shaved revealing two partially healed, red scars containing nine and twelve stitches respectively. Mr. Harding's mother, brother and two of his cousins all testified that he was at his mother's house at the time of the carjacking.

Mr. Harding also testified that Artric Jordan had loaned him the car and had given him the keys. Mr. Harding asserted that he did not know that the car was stolen. To establish that Jordan had stolen Colon's car, Mr. Harding sought to introduce evidence that Jordan lived within a block of the scene of the carjacking and had been arrested for armed carjacking less than a month after Colon's car was stolen. The trial court precluded him from introducing this

evidence; however, the court did permit Mr. Harding to show a mugshot of Jordan to Colon in court. Colon testified that he had never seen Jordan before and did not see him the night of the carjacking. Mr. Harding nevertheless was allowed to, and did, argue that Jordan had stolen Colon's car.

Mr. Harding had several prior convictions, including one for armed robbery. Prior to trial, the defense submitted a motion in limine to exclude certain information regarding these convictions. In response, the trial court ruled that, if Mr. Harding testified, the prosecution could elicit that he had been convicted of previous felonies and the dates of these felonies; however, the sentences Mr. Harding received and the nature of his offenses were inadmissible because the jury "would tend to convict him just because he's an armed robber." R.28, App. 2 at Z-9.

The prosecution did not elicit Mr. Harding's prior convictions on cross-examination, but Mr. Harding's attorney did raise the issue on re-examination over the prosecution's objections. During cross-examination, the prosecution had questioned Mr. Harding about giving the police a false name and address when he was arrested. On re-examination, Mr. Harding's counsel followed up on this questioning by asking Mr. Harding why he had done this. Mr. Harding replied, "You know, it puzzle me right now today, that is one of the fear that you have of polices really, its one of the fears, you know." R.28, App. 3 at AA-235 to AA-236. Then, the following examination took place:

Q Have you ever been arrested before?

A Yes, I have. Yes, I have.

Q And you've been convicted, is that correct?

A Yes, I have.

MR. CALLAHAN [prosecutor]: Objection, this is beyond the scope at this point, Judge.

. . . .

THE COURT: All right. Well, I'm going to leave it. So I'll overrule the State's objection.

MR. STANTON [defense counsel]: Q On October the 7th of 1982 before his Honor Judge McNulty were you convicted of a crime?

A Yes, I was.

MR. CALLAHAN: Objection, this is beyond the scope.

THE WITNESS: Yes, I was.

THE COURT: Well, no, it is not. It's collateral but the cross-examination related to truthfulness, this relates to truthfulness.

MR. CALLAHAN: Fine, Judge.

MR. STANTON: Q And as a result were you sentenced to thirty months['] probation?

A Yes, I was. Yes, I was.

Q On May the 1st of 1989 were you also convicted of the charge of unlawful use of a weapon by a felon?

A Yes, I was.

Q And were you given a sentence of two years in the Illinois Department of Corrections?

A Yes, I was.

Q And on April 25th of 1984 were you convicted of the crime of armed robbery and unlawful restraint, were you convicted?

A I was convicted, I don't know what you mean though, I was convicted.

MR. STANTON: Judge, I made a mention of something here and I would ask whatever I made mention of be at this time—

THE COURT: All right.

MR. STANTON: Stricken from the record.

THE WITNESS: It is okay.

THE COURT: Mr. Defendant.

THE WITNESS: It is okay, I'll explain it.

THE COURT: I run the Court. What the record will show and the jury is to consider, one, that there is a conviction on April the 25th, 1984, of a felony.

MR. STANTON: Thank you.

THE COURT: And anything else will be disregarded.

MR. STANTON: All right.

Q And pursuant to that conviction you received a sentence of ten years Illinois Department of Corrections concurrent with a three year sentence, is that correct?

A Yes; yes.

Q On all of those convictions that you were sentenced to the Illinois State pen did you do your time?

A Yes, I did. Yes, I did.

*Id.* at AA-236 to AA-238.

A jury convicted Mr. Harding on both the armed robbery charge and the possession of a stolen motor vehicle charge. The trial judge sentenced him to concurrent prison terms of thirty-two years on the armed-robbery charge and fourteen years on the possession charge.

## C.  State Appellate Court Proceedings

Mr. Harding appealed his conviction on three grounds. The two issues relevant to his current habeas petition are: (1) that the trial court erred by excluding evidence that Jordan had committed another carjacking shortly after Colon's car was stolen, and (2) that his trial attorney was ineffective for eliciting testimony about the details of his prior convictions. The Illinois Appellate Court affirmed the trial court's decision.

The state appellate court addressed whether it was error to refuse to admit evidence of a subsequent carjacking committed by Jordan. The court treated this claim as an evidentiary challenge and held that evidentiary decisions were committed to the sound discretion of the trial court. The appellate court explained that, at trial, Harding attempted to introduce evidence Jordan committed a car theft. He intended to use this evidence to show that subsequent theft revealed a common scheme and similar *modus operandi*. The appellate court, however, found no meaningful link between the two car thefts; it noted the different times of the thefts, types of location, number of occupants in the vehicle and the use of a real gun during the armed robbery of Colon rather than the use of a toy gun in the subsequent robbery Jordan was alleged to have committed. In light of the differences between the crimes, the appellate court held the state trial court did not abuse its discretion in refusing to admit this evidence.

The state appellate court also addressed the ineffective assistance of counsel claim. Employing the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), the court first noted that the decision to introduce evidence of prior convictions ordinarily is a question of trial strategy. On the

second prong of *Strickland*, the court noted that "the erroneous admission of other crimes evidence is harmless where properly admitted evidence is so overwhelming that no fair-minded jury could vote for acquittal." R.32, Ex.A at 14. The court determined that the error did not affect the outcome of the case and was therefore harmless. The court explained that conviction was based on the victim's identification of Mr. Harding at trial, testimony from an officer that Colon's car was found in Mr. Harding's possession and testimony that Mr. Harding claimed the car was his. The court further noted that, Mr. Harding's statement from the witness stand that "It is okay, I'll explain it," indicated his acquiescence to the introduction of his prior convictions. *See id.* (quoting trial transcript included at R.28, Ex.A at AA-238). Finally, the appellate court noted that the trial court had granted the defense counsel's request to strike the testimony and had instructed the jury to disregard the testimony as to the armed robbery. The appellate court concluded that this instruction was sufficient to remedy any error.

After unsuccessfully petitioning for leave to appeal to the Illinois Supreme Court, Mr. Harding filed a state petition for post-conviction relief. He raised eight new claims. As the district court recounted:

> He argued that (1) his due process rights were violated when the state knowingly elicited false testimony from one of its police officer witnesses; (2) he was denied his 6th Amendment right to confront and cross-examine that false testimony; (3) he was denied due process because the state knowingly suppressed evidence; (4) his appellate counsel was ineffective for failing to raise issues on direct appeal; (5) his appellate counsel was ineffective for failing to interview Artric Jordan; (6) he was denied a fair and impartial jury because his trial attorney failed to challenge prospective jurors for cause; (7) he

was denied due process when one of the officers on the case destroyed evidence of a suggestive line-up and fabricated other line-up reports introduced into evidence; and (8) he was denied due process based upon the excessive delays during the appellate process.

R.34 at 6-7. The state trial court denied Mr. Harding any relief. Mr. Harding appealed the dismissal of his post-conviction petition, but the state appellate court affirmed the dismissal of the post-conviction relief. After Mr. Harding's court-appointed counsel was allowed to withdraw from the case, Mr. Harding requested a rehearing and later filed a petition for leave to appeal to the Illinois Supreme Court. Both were denied.

### D. District Court Proceedings

Mr. Harding filed a petition for a writ of habeas corpus, which raised the same claims that his petition for post-conviction relief addressed, plus one new claim. The district court then appointed an attorney to represent Mr. Harding. Counsel then filed an amended petition, which reduced the issues to ineffective assistance of counsel and the exclusion of Jordan's carjacking arrest. The district court denied relief with respect to both claims.

The district court first addressed the ineffective assistance of counsel claim. The court concluded that this claim had not been procedurally defaulted and that Mr. Harding had not forfeited the error by acquiescing in his attorney's questioning. The court explained further that Mr. Harding fairly presented this claim to the Illinois state court and that, when Mr. Harding answered his attorney's questions, he was trying only to appear cooperative. Because Mr. Harding had no opportunity to oppose or comment on his attorney's

questioning, he could not have been acquiescing. The district court further noted that the state court's ruling addressed the question of acquiescence only after it had addressed the merits of the ineffectiveness claim. The state decision therefore did not rest on an independent state procedural ground; accordingly, ruled the district court, it was proper for the federal court to consider the merits of Mr. Harding's claim.

On the merits of this claim, the district court recognized the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), as controlling and noted that it required Mr. Harding "to demonstrate that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced his defense that it deprived him of a fair trial." R.34 at 12. The district court then determined that the state court had made no findings on counsel's performance. Consequently, the district court addressed this issue for the first time. The court found that counsel's "strategy" was to elicit testimony regarding the prior convictions in an effort to explain why Mr. Harding had lied to the police about his name and address. The court also found that Mr. Harding's counsel knew the information was prejudicial because he had argued previously that the same evidence was unduly prejudicial in an effort to suppress it. After describing defense counsel's strategy as "bone-headed" and its execution as "atrocious," the court concluded that counsel's performance fell well below an objective standard of reasonableness. R.34 at 13-14.

The district court then decided that the state court's determination on the prejudice prong of *Strickland* was not an unreasonable application of *Strickland*. Although the district court did not agree that the evidence against Mr. Harding was overwhelming, it nevertheless concluded that the state court's decision on prejudice "was not so wide of the mark as to be unreasonable." *Id.* at 16-17. The district court then

recounted the evidence that supported the conviction, including that: the victim was face-to-face with the gunman for thirty seconds; the street was illuminated by lights; the victim recognized Mr. Harding as the gunman; the victim did not recognize Jordan from a photograph; the police officer testified that Mr. Harding had told him the car was his; and the victim's papers were found in the car. Finally, the district court noted that the state appellate court relied on the jury instruction to disregard the reference to a prior armed robbery, potentially the most prejudicial aspect of the questioning. Therefore, the district court rejected Mr. Harding's ineffective assistance of counsel claim.

The district court next addressed Mr. Harding's due process claim. Focusing on whether Mr. Harding fairly presented the issue to the state courts, the district court noted that Mr. Harding had stated in one introductory sentence that "[t]he court's refusal to allow him to [introduce the evidence] violated his constitutional right to introduce evidence in his own defense and denied him a fair trial." *Id.* at 19 (quoting Harding's Appellate Brief on direct appeal, R.32, Ex.B at 14). His argument and supporting discussion for this claim, however, addressed it as an evidentiary issue and not a constitutional claim. Consequently, the state appellate court had addressed it as such. The district court further noted that Mr. Harding's subsequent petition to the state supreme court was a verbatim copy of his appellate brief. The district court viewed his appeal and unchanged petition to the supreme court as an indication that the "nature of the claim remained the same." *Id.* at 20. Mr. Harding's amended federal habeas petition, however, uses constitutional terms to make his argument. The district court concluded that, although the "governing legal principles differ[ed]," the thrust of his argument was parallel to his argument in state court; therefore, it proceeded to consider the merits of his claim. *Id.*

On the merits of the claim, the court first noted that evidence of Jordan's carjacking arrest was properly excluded under state evidentiary requirements. Therefore, the issue, said the district court, was whether the state's evidentiary ruling inhibited the defendant's Sixth Amendment right to present a defense. The court noted that a state law does not infringe on a person's right to present a defense unless it is "arbitrary" or "disproportionate to the purpose[ ] [it is] designed to serve." *Id.* at 21 (alteration in original) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). The state rule at issue was the equivalent of Federal Rule of Evidence 404(b), which, the court noted, does not violate this principle. The court further noted that the differences in the two carjackings were sufficiently significant to make the state court's ruling to exclude evidence of Jordan's arrest for carjacking a reasonable one. Therefore, the district court rejected Mr. Harding's due process claims.

After the court rejected the petition on both claims, it certified those issues for appeal.

## II

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a writ of habeas corpus only shall be granted if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d). Under this provision, a federal habeas court must find that the state's application of federal law was unreasonable and not simply erroneous or incorrect. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. The habeas applicant has the burden of proof to show that the application of federal law was unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## A. Ineffective Assistance of Counsel Claim

We first examine whether the district court erred in ruling that the state appellate court reasonably determined that Mr. Harding was not deprived of a fair trial based on his claim of ineffective assistance of counsel.

### 1. Procedural Default

The State first submits that Mr. Harding waived his claim of ineffective assistance of counsel because the state court found that Mr. Harding had "acquiesced" to his counsel's line of questioning regarding his prior convictions. If this characterization is correct, it shall preclude our review because a state prisoner may only obtain federal habeas review if he has exhausted state remedies and avoided procedurally defaulting his claim. *See Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000).

The procedural default doctrine stems from federalism principles, specifically the idea "that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 124 S. Ct. 1847, 1852 (2004). A federal court may address a habeas

petition when the last state court's decision did not expressly rely on an independent and adequate state ground but instead depended on or involved the resolution of a federal claim. *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991). "[I]f the state-court decision appears to rest primarily on a merits determination of the petitioner's claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, there is no independent and adequate state ground." *Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002). Therefore, this court must determine if the state court based its decision on an adequate and independent state ground or on resolution of Mr. Harding's federal claim.

Here, the state appellate court discussed the merits of Mr. Harding's claim under *Strickland v. Washington*. The court spent several paragraphs discussing the prejudice prong. Only one paragraph of this discussion addresses acquiescence, and it appears in the middle of several other reasons the court uses to demonstrate that Mr. Harding was not prejudiced. The court first noted that any deficient performance by his counsel would be harmless because of the overwhelming evidence against the defendant. Then the court mentions Mr. Harding's acquiescence. Later, the state court also found that the judge's limiting instruction was sufficient to remedy the ill-advised questions. We think that the state court's approach is most accurately characterized as addressing the merits of the ineffective assistance claim and, in the course of that analysis, providing three reasons why Mr. Harding was not prejudiced by counsel's questions. Therefore, the last state court ruling did not rest expressly on an independent state ground. We may consider the merits of Mr. Harding's claim.

We agree with the district court's estimation that Mr. Harding's answering of his attorney's questions cannot be

characterized reasonably as acquiescence. Mr. Harding did not have an opportunity to oppose or comment on his attorney's decision to ask such questions before they were presented to a jury. Mr. Harding never expressly agreed to his attorney's line of questioning by indicating his willingness to answer the questions. Notably, the state trial judge made it clear to Mr. Harding that it was not his place to determine the course of questioning. Mr. Harding had no real choice but to attempt to appear cooperative.

## 2. Merits

Because Mr. Harding's ineffective assistance of counsel claim was not waived, we must determine if the state appellate court reasonably held that Mr. Harding had received effective assistance of counsel. The state appellate court correctly identified the federal standard for an ineffective assistance of counsel claim as the two-pronged test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). The test provides that (1) the attorney's performance must fall below an objective standard of reasonableness, and (2) the attorney's deficient performance actually must have prejudiced the petitioner. *See id.* at 680-82. We shall examine each of these considerations.

### a. performance of counsel

We first examine whether the state appellate court reasonably applied the first prong of *Strickland*, regarding the performance of Mr. Harding's counsel. The district court determined that the state appellate court did not make a finding on whether counsel's performance was objectively unreasonable. The state contests this conclusion by noting that the state appellate court observed that admitting evi-

dence of prior crimes is generally a matter of trial strategy. The state equates this description with a determination by the trial court that counsel's performance was reasonable. As a result, the state suggests that the district court should not have evaluated the merits of counsel's performance but instead should have confined its evaluation to a determination of whether the state appellate court's decision was an unreasonable application of the first prong of *Strickland*.

The State accurately notes that the state appellate court described the attorney's decision to introduce evidence of other crimes as generally a matter of trial strategy; it then assumes that this description by the appellate court amounts to a definitive estimation of the performance of Mr. Harding's attorney. We cannot accept this view. The state appellate court did not conclude that Mr. Harding employed a reasonable trial strategy or that his performance was reasonable. The district court correctly determined that the state appellate court did not make a finding under the first prong of *Strickland* on the reasonableness of the attorney's performance. Accordingly, the district court correctly reviewed this issue de novo.

The Supreme Court has not set out a specific checklist to determine whether an attorney's performance falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Instead, an attorney's conduct will be judged against prevailing norms to determine if it was reasonable in light of the surrounding circumstances. *See id.* Also, a court must be highly deferential when evaluating an attorney's performance. *See id.* at 689. In order to give the attorney a fair evaluation, every effort must be "made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The performance of Mr. Harding's counsel must be examined in light of the circumstances surrounding Mr. Harding's testimony. Mr. Harding's counsel recognized the possible prejudice of having Mr. Harding's prior convictions presented before a jury. Accordingly, he filed a motion in limine to have the evidence excluded. The trial court also recognized that the nature of Mr. Harding's prior convictions would prejudice the jury when it ruled that the nature of Mr. Harding's prior convictions could not be introduced and that the jury could be told only that he had been convicted of felonies on certain dates.

During cross-examination, the prosecution introduced the fact that Mr. Harding had given the police a false name. In the questionable trial strategy at issue here, Mr. Harding's counsel then tried to explain to the jury why Mr. Harding had given the police a false name and address and why he feared the police. Although Mr. Harding's credibility may have been damaged by evidence that he provided police with a fictitious name, we agree with the district court's determination that counsel's attempt to recover from this relatively mild disclosure by discussing Mr. Harding's prior convictions was far more damaging than the initial injury. Mr. Harding's attorney particularly injured his client when he introduced the fact that Mr. Harding had been convicted of armed robbery and the length of the prison term that the defendant had served for that crime. Therefore, we agree with the district court that counsel's performance fell well below the objective standard of reasonableness in *Strickland*.

### b. prejudice

We next must address whether the state appellate court's application of the second prong of *Strickland*, whether the

attorney's deficient performance was prejudicial, was unreasonable. Under the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Even if the odds that the defendant would have been acquitted had he received effective representation appear to be less than fifty percent, prejudice has been established so long as the chances of acquittal are better than negligible." *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003).

We agree with the district court's determination that, although the evidence against Mr. Harding may not have been overwhelming, the state appellate court's decision nevertheless cannot be characterized as unreasonable. Some evidence certainly weakened the prosecution's case: the victim's in-court identification of Mr. Harding was subject to some doubt because the victim had seen Mr. Harding in court as the subject of prosecution on five prior occasions. Moreover, the victim never reported observing any scars on his assailant's head even though Mr. Harding and his family members testified that during the relevant time Mr. Harding had a partially shaved head exposing two noticeable red scars.

Although these factors may have supported Mr. Harding's defense, the state appellate court still based its determination on considerable evidence. This evidence includes: the victim's unobstructed face-to-face confrontation with the gunman for thirty seconds while standing in a well-lit intersection; the victim's in-court identification of Mr. Harding as the assailant; Mr. Harding's possession of the victim's car; the officers' testimony that Mr. Harding claimed ownership of the car, although, upon inspection, the vehicle contained the victim's insurance papers and license plates and the victim's testimony that he had never seen Jordan before.

Finally, the jury was instructed to disregard the information presented regarding Mr. Harding's prior conviction for armed robbery. Juries are presumed to follow all instructions given by the court. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

We agree that the state appellate court was not unreasonable to rely on the instruction of the jury to disregard the reference to armed robbery. Further, regardless of whether we characterize the evidence as "overwhelming," there is no question that the evidence supporting the conviction was considerable; it included an in-court identification and testimony that the accused claimed ownership of the vehicle. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). We cannot conclude that the state appellate court unreasonably applied *Strickland* when it held that counsel's error did not undermine confidence in the verdict in light of the jury instruction and what it properly considered as overwhelming evidence.

## B. Due Process Claim

We now turn to the issue of whether the district court erred in ruling that the state appellate court acted reasonably in its assessment of the trial court's exclusion of evidence relating to Jordan's arrest for carjacking.

### 1. Fair Presentment

First, we must consider whether Mr. Harding fairly presented the claim to the state court. AEDPA requires a petitioner to exhaust all available remedies in state court prior to the issuance of a writ of habeas corpus. *See* 28 U.S.C.

§ 2254 (b)(1). State courts must have a fair opportunity to address constitutional questions before they are presented to a federal court. *See United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984). Specifically, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (internal citations omitted).

We have substantial concerns as to whether Mr. Harding ever raised either a Sixth or a Fourteenth Amendment claim in the state court. In *Wilson v. Briley*, 243 F.3d 325 (7th Cir. 2001), we noted that this court has considered four factors to determine whether a petitioner fairly presented his claim to the state court:

> (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 327. We further noted:

> "Abuse of discretion" and "improper factors" are not terms that Illinois lawyers and judges, by quirk of local legal idiom, use to articulate constitutional arguments. To the contrary, abuse-of-discretion arguments are ubiquitous, and most often they have little or nothing to

do with constitutional safeguards . . . . Indeed, the fact that Wilson relied upon state cases which engaged in a non-constitutional analysis based solely on state law principles belies the notion that the Illinois appellate court should have understood that Wilson was invoking his rights under the U.S. constitution.

*Id.* at 328 (citations omitted).

Initially, we note that Mr. Harding's state appellate court brief frames the issue as whether the trial court erred when it refused to admit evidence of another crime committed by Jordan. As the district court noted in reviewing the habeas petition, only in the opening paragraph of his state appellate brief does Mr. Harding make reference to a constitutional claim. Specifically, Mr. Harding stated that the trial court's refusal to allow him to introduce evidence of Jordan's arrest "violated his constitutional right to introduce evidence in his own defense and denied him a fair trial." R.32, Ex.B at 14. The remaining discussion dealt solely and specifically with the issue in terms of evidence law. For example, Mr. Harding proposed an abuse of discretion standard as the appropriate standard of review for "a question of the admissibility of evidence." *Id.* He then cited numerous state court cases addressing the admissibility of evidence, the probative value of similar evidence and dangers of unfair prejudice. Specifically, Mr. Harding asserted that the evidence was admissible as part of a common scheme. Instead of claiming that this evidence was necessary to ensure his right to present a defense or to provide a fair trial, Mr. Harding summarized that the evidence was merely admissible because it was "probative of the truth of Harding's statement that Jordan gave him Colon's car." *Id.* at 17.

Accordingly, when the state appellate court ruled on the issue it addressed the claim as an "an evidentiary matter"

committed to the trial court's discretion. R.32, Ex.A at 8-10. Taking its cue from Mr. Harding's submission, the state court addressed whether the evidence was relevant as part of a common scheme. After the appellate court affirmed the trial court's exclusion of the evidence by addressing it as a state law evidentiary issue, Mr. Harding did not clarify that he was actually seeking review of a constitutional violation. Instead, Mr. Harding presented his appellate court argument verbatim when he petitioned for leave to appeal to the Supreme Court of the State of Illinois.

Mr. Harding now asserts a violation of his Sixth and Fourteenth Amendment rights. In contrast to his briefs on direct appeal, Mr. Harding now relies upon federal cases discussing federal law. In his state court brief, he had included only an introductory sentence making a passing reference to his right to present evidence and his right to a "fair trial." This reference was not sufficient "to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) (citations omitted) ("A mere 'passing reference' to a constitutional issue certainly does not suffice."). Nearly every portion of his state court argument pointed to a state evidentiary issue.

The strongest argument that Mr. Harding could make for fair presentment was that he had "framed the claim in terms so particular as to call to mind a specific constitutional right." *Wilson*, 243 F.3d at 327. However, his subsequent submission to the Supreme Court of Illinois belies this contention. When the state appellate court addressed his contention as only an evidentiary issue, Mr. Harding merely presented his argument without changes to the Supreme Court. He did not explain that the appellate court improperly overlooked or mischaracterized his claim. Mr. Harding did not present "both the operative facts and the controlling legal princi-

ples" to the state court. *Chambers*, 264 F.3d at 738. In sum, the state court did not have a meaningful opportunity to consider the claims Mr. Harding now submits.

### 2. Merits

Even if we were to conclude that Mr. Harding's single sentence provided the state courts a fair opportunity to address the federal claim, we must conclude that the claim is without merit.

Mr. Harding asserts that he was denied his Sixth Amendment right to present a defense and his Fourteenth Amendment right to a fair trial when he was prohibited from offering evidence that Jordan was arrested less than a month after the carjacking and that he lived within a block of where it took place.

A state court's decision to exclude evidence may implicate the Constitution and the defendant's right to present his defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). The Court later explained in *Rock v. Arkansas*, 483 U.S. 44 (1987), that the "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 55-56. A state "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Id.* at 55.

The state court determined that a subsequent car theft was a "collateral issue not germane to the issues before the court" without some "connection" or "nexus" between the two car thefts. R.32, Ex.K at Z-19 to Z-30. Therefore, it excluded the evidence under the Illinois equivalent of Federal Rule of Evidence 404(b). Rule 404(b) is not unconstitutional and therefore Illinois' equivalent is not unconstitutional. *See*

*Edmunds v. Deppisch*, 313 F.3d 997, 999 (7th Cir. 2002). Its restrictions are not disproportionate to the purposes they are designed to serve. Accordingly, "if [the state court's] ruling is reasonable, then there is no basis for deeming it unconstitutional." *Id.* Here, the state court's decision is reasonable; it is based on clear differences between the carjacking in this case and Jordan's carjacking. The two carjackings took place at different times of the day, in different locations and with a different number of victims. Furthermore, here, the victim was threatened with a real gun whereas Jordan supposedly had used a toy gun. Therefore, we conclude that the state court's application was reasonable and that the interests served by the Illinois Equivalent of Rule 404(b) "justify the limitation imposed on the defendant's constitutional right to testify." *Rock*, 483 U.S. at 56.

## Conclusion

For the foregoing reasons, we believe that the district court committed no reversible error in its adjudication of this petition for relief under 28 U.S.C. § 2254. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*